**RESERVE LIFE INS. CO. v. TEXAS EMPLOYERS' INS. ASS'N.**

No. 4868.

Court of Civil Appeals of Texas. El Paso.

July 23, 1952.

Rehearing Denied Aug. 13, 1952.

Lane & Savage, Dallas, for appellant.

Leachman, Matthews & Gardere, Dallas, Henry D. Akin, Dallas, of counsel, for appellee.

PRICE, Chief Justice.

This is an appeal from one of the District Courts exercising jurisdiction in Dallas County. Texas Employers' Insurance Association, hereinafter called appellee, sued Reserve Life Insurance Company, hereinafter called appellant, to recover the reasonable cash market value of certain lighting and air conditioning equipment in their depreciated condition at the termination of a lease contract under the eleventh provision thereof, copied below. The case was tried before the court without a jury, and a judgment for $24,939.30 was rendered for appellee.

Frank H. Abel, owner of an office building in the city of Dallas, made four leases to appellee, the first of which was dated February 28, 1946, the second May 7, 1947, the third May 28, 1947, and the fourth June 14, 1948, all of which leases commenced on the 1st day of June of the years when executed, except the fourth, which com-

menced July 1st, and all ended on the 31st day of May, 1954. The leases in the aggregate covered the office space on the fifth and sixth floors and the east half of the fourth floor, which was for a stipulated sum payable in monthly installments. The second and third leases contained the following provision, to-wit:

"Eleventh. It is understood and agreed that the lessee after securing Lessor's approval, may, at its own expense, make changes in office partitions, or may erect new partitions in the premises covered by this lease. Also Lessee may install new lighting fixtures, provided such installation will not increase the electrical load; also Lessee may install air conditioning equipment if sufficient current is available in present building wiring, and by paying Lessor for the current consumed. Installation of such air-conditioning equipment must be made so no damage will result to the building and also not be obnoxious to other tenants. The Lessee may remove upon termination of this lease, all its own equipment and agrees to replace any of Lessor's fixtures which may be removed. The Lessor will bear no part of the costs which may be incurred under this paragraph."

The fourth lease contained the provision upon which appellees sued, and was practically identical with the amendment to the first three leases, which was as follows:

"It is mutually agreed that type written paragraph eleventh of the lease dated May 7, 1947, between Frank H. Abel as lessor and Texas Employers' Insurance Association as lessee, covering space in the Construction Building, Dallas, Texas, is amended so as hereafter to be and read as follows:

" 'Eleventh. It is understood and agreed that the Lessee, after securing Lessor's approval, may, at its own expense, make changes in office partitions, or may erect new partitions in the premises covered by this Lease. Also Lessee may install new lighting fixtures, provided such installation will not increase the electrical load; Les-

see may also install air-conditioning equipment if sufficient current is available in present building wiring, and by paying Lessor for current consumed. Installation of such air-conditioning equipment must be made so no damage will result to the building, and also not be obnoxious to other tenants. The Lessor will bear no part of costs which may be incurred by Lessee in such alterations of the building except the painting of new partitions which may be erected, and Lessor will bear no part of the initial cost of lighting fixtures or air-conditioning equipment installed by Lessee. All such partitions or permanent alterations shall become Lessor's property from and after the time they are made. All such lighting fixtures or air-conditioning equipment installed by Lessee and remaining on the premises at the expiration or termination of this lease shall at that time be purchased by Lessor, and Lessor agrees to pay Lessee therefor the reasonable cash market value of such fixtures and equipment in their then depreciated condition.'

"This agreement supersedes all prior agreements concerning the subject matter hereof. All other terms and conditions of the original lease shall remain as written."

On July 6, 1948, the eleventh provision of the fourth lease contract was added to the other three as an amendment.

The Lessor in these leases, Abel, on January 6, 1949, by general warranty deed conveyed the building a part of which was subject to the four leases above referred to, to appellant. By mutual agreement the leases were terminated June 1, 1950. The parties were unable to agree upon the price that should be paid for the lighting fixtures and air-conditioning equipment; the arbitration provision was waived, and this suit was filed by the appellee. The trial was to the court without a jury and judgment was rendered in favor of appellee for $24,939.30. The controversy was about the last quoted provision of paragraph eleven, which provides in substance that the Lessor shall purchase the lighting

fixtures and air-conditioning equipment at the termination of the lease. Most of these fixtures had been installed prior to the insertion of paragraph eleven in the leases as an amendment.

Appellant briefs its case under seven points of error, in substance as follows: The court erred in rendering judgment for the appellee because the provision for the purchase of the installations is not a covenant running with the land; because the price to be paid is not for the value to the owner in place but the reasonable market value thereof if removed and sold on the open market; because the court erred in allowing the appellee to plead, prove and recover judgment on a cost-plus-depreciation formula instead of the value provided for; because the judgment allowed recovery for the electrical work, duct work and other installation items that had been affixed to the realty and become a part of the property belonging to Lessor prior to the amendment; because the amendment was not retroactive and did not purport to change the existing property rights; because the judgment permitted a recovery of the value of labor and material involved in the electrical and duct work done in connection with the installation of the fixtures and air-conditioning equipment, whereas the contract was Lessor would pay no part of the initial cost but only for the fixtures, and because the reasonable cash market value as used in the contract means what is expressed in the usual definition of market value and not such price plus the cost of installation in the building; and in rendering judgment for interest from June 1, 1950.

Thirty lighting fixtures and two air-conditioning units were installed after the first lease and before the second and third; 118 lighting fixtures and 2 air-conditioning units were installed after the second and third leases and before the fourth, and 49 lighting fixtures and one air-conditioning unit after the execution of the fourth lease and the amendments of the other leases.

■ In our opinion the covenant to purchase ran with the land. There are two classes of covenants that run with the land.

those that are implied by law and those that are stipulated by the parties. Here it is thought the parties intended to stipulate the covenant to purchase should run with the land. The contract binds the Lessor, his heirs and assigns. The covenant to remove, originally inserted in the second and third leases, ran with the land. Guardian Loan & Trustee Co. v. Schunke, Tex.Civ.App., 36 S.W.2d 585, writ refused. If the lighting and air cooling equipment installed were improvements the covenant would run with the land, and we think the installations were if not in fact improvements analogous thereto. Air conditioning equipment varies in type and in elaborateness, as pointed out in Moskowitz v. Calloway, Tex.Civ.App., 178 S.W.2d 878, and the cases there cited, and may be a fixture in one instance and removable fixtures in another, not subject to removal. The units in the instant case are described as "Grovenair 15-ton package type units" containing the three necessary elements, compressor, condenser and fan. The installation is elaborate, but whether a real fixture or not was made subject to removal and sale on the termination of the lease.

In regard to the measure of its compensation appellee pled as follows: That relying upon such provisions of said leases the said Lessor and his assigns should pay plaintiff the reasonable cash value in their then depreciated condition, of all lighting fixtures and air conditioning equipment installed by plaintiff in said building, that plaintiff did install electrical fixtures in said building at a cost of $11,324.99, and air-conditioning equipment at a cost of $35,-408.16, said lighting fixtures being installed during the years 1946, 1947, 1948 and 1949, and said air conditioning equipment being installed during the years 1946, 1947 and 1948; that the leases were terminated by mutual agreement on June 1, 1950; that the reasonable cash market value of the lighting fixtures and air conditioning equipment in their then depreciated condition was the sum of $35,917.04.

■ Prior to the amendment of the eleventh clause or paragraph of the lease plaintiff's right on the termination thereof was to remove the lighting and air conditioning equipment, but before the amendment all that the lessee could realize on these fixtures was the reasonable cash market value thereof, and deducted from this must be the cost of removal. By the amendment the appellant bound itself to pay for these fixtures, which were then the property of appellee. Appellee gained by this amendment the binding contract of appellant to purchase same, appellant gained the right to purchase same. Appellant was by the judgment of the trial court compelled to pay for this property, for which it had contracted to pay the cash market value, the peculiar value the same had to appellee. This was a price different from what it had contracted to pay. In place, unless coupled with the right of removal, these fixtures could have no market value. In place without the right of removal no one could purchase same from the Lessor. The peculiar value of the fixtures in place, to the Lessor the owner of the building, was not the price Lessor agreed to pay. The price, in substance, was the fair market value at the termination of the lease in the then condition of the property. It is true, no doubt, that at the time the parties entered into the contract in question it was not contemplated that the fixtures be removed by either the Lessor or Lessee. This does not militate against the idea that the price fixed was to be what the market value of the fixtures would be, removed from the building and sold without reference to their connection therewith. The price which appellant was to pay for these fixtures was not definite and certain, the standard fixed for determination of the price was what would be the fair cash market value of the goods on the termination of the lease. To lay down the rule that the measure of what the goods attached to the building would bring on the market is to find the exact formula fixed by the parties.

■ Appellee does not contend that it was entitled to recover beyond the reasonable cash market value of such fixtures and equipment in what would be their depreciated condition at the termination of

the lease, but contends the fair market value must be determined by the fixtures in place. If this be adopted, which it evidently was by the trial court, then there could be no value to anybody other than the owner of the building, or a tenant of the owner. It is elementary that such a standard would not represent the fair market value of these fixtures. Such a standard would be the value of the fixtures with reference to their use in connection with this building alone. It was personal property, the subject matter of the eleventh clause heretofore copied herein. The trial court adopted a formula for fixing the price to be paid by appellant which was different and varied from the contract.

From the amount of the judgment it intrinsically appears that the court relied largely on the testimony of appellee's witness, Greggerson. Mr. Greggerson, it appears from his testimony, took the cost of the fixtures at the time they were purchased, depreciated this cost, took into consideration the cost of installation, and thus he arrived at the cash market value, in fact it intrinsically appears from his testimony that he did not take into consideration what the property would bring at a sale. His testimony in no way tended to establish market value. The court in effect allowed the cost of the fixtures less depreciation, plus cost of installation. Neither the eleventh clause nor any other clause of the lease provides that appellant should at the termination of the lease pay the cost of betterments to the building. It did agree to pay the cash market value of the lighting and cooling fixtures at the termination of the lease. If we adopt the formula adopted by Mr. Greggerson in arriving at the cash market value we violate the provision of the lease that lessor will bear no part of the initial cost of the lighting fixtures or air conditioning equipment installed by lessee. Under Mr. Greggerson's basis of estimation lessor did bear part of the initial cost of the fixtures, in fact he bore the entire cost of the fixtures less depreciation, and likewise the cost of their installation.

In considering this case it is to be borne in mind that this case is for the enforcement of a contract price and does not sound in tort. Appellant contracted to buy personal property and to pay therefor the cash market value. Appellant did not contract to pay for any peculiar value the property might have to it in connection with its relation to appellant's building. It bound itself to pay for these fixtures what same could be acquired for on the market.

It is ordered that the judgment of the trial court be reversed, and the cause remanded for a new trial.

McGILL, Justice.

I concur in the disposition of the majority reversing the judgment of the trial court and remanding the cause. However, I am not in accord with the views expressed in the majority opinion. As conceded by the majority, the parties under the 11th paragraph of the lease as amended on July 6, 1948, contemplated that the fixtures or equipment should not be removed from the building on termination of the lease. In the building these fixtures and equipment unquestionably had a value far in excess of the salvage value they would have had if removed and sold on the market. This is the value the parties had in mind and which the lessor agreed to pay. The language employed "fair cash market value" is not an insurmountable obstacle. The fixtures and equipment in the building unquestionably enhanced the value of the use of the building to anyone in the market for its use. True the market would be somewhat limited, but that it had a market value in place it seems to me is certain. Also, it seems incongruous to distort this value into a value which the fixtures and equipment would have if removed, when the parties clearly contemplated that they should not be removed. However, by the express terms of the last amendment, "permanent alterations" were to become the lessor's property on termination of the lease, and therefore whether they were a part of the equipment or not he did not agree to pay for them. That the ducts and conduit wiring were such permanent alterations there can be no doubt; nor can there be any doubt that the court considered their value in arriving at

the amount of the judgment. Such value cannot be accurately ascertained from the record so that it can be deducted from the amount of the judgment and the judgment reformed accordingly. Therefore I agree that a reversal and remand is required.