**Max BLASSER et al., Appellants,**

v.

**A. B. CASS, Jr., Appellee.**

No. 3465.

Court of Civil Appeals of Texas.

Waco.

April 11, 1957.

Rehearing Denied May 16, 1957.

Morris I. Jaffe and Jay S. Fichtner, Dallas, for appellants.

Sanders, Lefkowitz & Green, Jack D. Eades, Dallas, for appellee.

TIREY, Justice.

Plaintiff, a duly licensed real estate dealer, brought this action for additional lease commissions accruing to him by reason of the exercise of renewal options in three written leases which he had obtained and for attorney's fees. The cause was tried without the aid of a jury and the court awarded judgment in favor of plaintiff for the sum of $1,260, with interest at the rate of six per cent per annum on $840 from September 1, 1953, and on $420 from October 1, 1953 to August 3, 1956, and in the aggregate of $1,479.03, with interest from date of judgment at the rate of six per cent per annum. The court found that plaintiff was not entitled to recover commissions in the sum of $540 claimed by reason of renewal of the lease with Henry K. Friedlander, and further held that plaintiff was not entitled to recover a reasonable attorney's fee, and decreed accordingly. Plaintiff duly excepted to that part of the judgment that held he was not entitled to judgment against Friedlander and for attorney's fees and gave notice of appeal to the Dallas Court of Civil Appeals. Defendants duly excepted to the judgment entered against them and gave notice of appeal to the Dallas Court of Civil Appeals and duly perfected their appeals, and the cause is here on transfer order of our Supreme Court.

At the request of defendants the court filed findings of fact and conclusions of law and we quote them substantially:

"Findings of Fact

"Plaintiff, A. B. Cass, Jr., was a duly licensed real estate dealer and agent under the laws of the State of Texas, and a member of the Dallas Real Estate Board, engaged in business as such in Dallas, Dallas County, Texas, during the period from 1945 to the present date.

"2. Louis Meyer, as owner and lessor of certain premises in Dallas County, Texas, in 1948 entered into lease contracts on the premises as follows:

"(a) With Henry Klepak and Beef N'Bun for five years from September 1, 1948 to August 31, 1953.

"(b) With Dr. R. M. Connell for five years from October 1, 1948 to September 30, 1953.

"(c) With Henry K. Friedlander for four years and ten months from November 14, 1948 to September 15, 1953.

"Each of said leases had a primary term of five years, except Friedlander.

"3. In each of the leases Louis Meyer agreed to pay plaintiff an additional commission of 4% of any total gross renewal rental as a real estate agent's additional commission, should the lessees exercise their option to renew their leases on the expiration dates.

"4. Each primary lease had typed in the name of the plaintiff in the following manner:

"A. B. Cass, Jr., Real Estate
"By: A. B. Cass, Jr.

"The written signature of A. B. Cass, Jr., did not appear on any of the leases nor did any other signature appear on these leases for A. B. Cass, Jr.

"5. The three leases forming the basis of plaintiff's suit specifically provide in paragraph 14 thereof as follows:

"'14th. Lessor agrees to pay the undersigned agent a commission for negotiating this lease. If any options are granted Lessee, then Lessor agrees to pay such agent an additional commission on the date such options are exercised by Lessee. Should the term of the lease be for a shorter period than five years, Lessor agrees to pay an additional Commission on all renewals, new leases or rental agreements made by Lessor with Lessee relative to Lessee's first five years occupancy of the demised premises from

this date; the commission due for each renewal to be figured as if a new lease had been made for such period of time. All of said commissions are to be paid in Dallas, Texas, in accordance with the Commission Schedule of the Dallas Real Estate Board in effect at the date this lease is executed.

" 'In the event of the assignment of this lease, or sale of the premises prior to the termination thereof, Lessor, his assigns, successors and heirs individually and jointly, shall be liable for all agent's commissions due or to become due hereunder.'

"The only difference in the three leases is that the last sentence above quoted appeared in the Beef N' Bun or Klepak lease and in the Connell lease, but was omitted in the Friedlander lease.

"6. Louis Meyer sold and conveyed the above premises to Sam Blasser and defendant, Max Blasser, by deed dated March 17, 1949, which provided that the conveyance was made subject to six existing lease agreements on the property, and the grantees acquired the property with notice of the provisions of the leases thereon.

"7. Sam Blasser died intestate in Dallas County, Texas, on November 24, 1951, and was survived by the defendant, Mrs. Jessie Blasser, surviving widow, and Mrs. Eugene Levin, surviving daughter, who are the sole surviving heirs at law and sole distributees of the estate of Sam Blasser, and that Eugene Levin was formerly appointed Administrator of the Estate of Sam Blasser, deceased, but has been discharged and the administration has been closed, and the estate has been distributed to the above heirs.

"8. On September 1, 1953, the expiration date of the aforementioned lease with Henry Klepak and Beef N' Bun, another lease was entered into between Henry Klepak and Beef N' Bun and the defendants, such lease being contained in the statement of facts filed herein and the exhibits attached thereto, which statement of facts is referred to, incorporated herein by reference and made a part hereof.

"9. On September 30, 1953, the expiration date of the aforementioned lease with Dr. R. M. Connell, another lease was entered into between Dr. R. M. Connell and the defendants, such lease being contained in the statement of facts filed herein and the exhibits attached thereto, which statement of facts is referred to, incorporated herein by reference and made a part hereof.

"10. On February 21, 1953, effective September 16, 1953, the expiration date of the aforementioned lease with Henry K. Friedlander, another lease was entered into between Henry K. Friedlander and the defendants, such lease being contained in the statement of facts filed herein and the exhibits attached thereto, which statement of facts is referred to, incorporated herein by reference and made a part hereof.

"11. Prior to the filing of this suit, on July 9, 1954, demand was made by plaintiff's attorney on defendants' attorney for the payment of the real estate agent's renewal commission, but payment was refused and no payment was or has been made.

"12. Plaintiff retained the law firm of Sanders, Lefkowitz & Green to seek recovery of his claim and agreed to pay them a fee of $1000 for their services; the docket sheet and court papers in this cause show the following:

"(a) Suit for $1800.00, plus $320.00 interest, or a total of $2120.00, was filed on July 9, 1954, and was set and reset for trial six times.

"(b) A motion for summary judgment was filed January 7, 1955, and was

set for hearing three times and was passed.

"(c) Pre-trial was held on October 6, 1955.

"(d) A request for admissions of fact was filed November 23, 1954, this document containing three pages.

"(e) An original petition and four amended original petitions, each containing five pages, were filed.

"(f) Trial was held on August 3, 1956.

"(g) Brief of Authorities containing five pages was filed on August 15, 1956, and oral argument to the Court was made.

"Conclusions of Law

"1. By the execution of the three leases in 1948, Louis Meyer became legally obligated to pay plaintiff an additional commission of 4% of any total gross renewal rental as a real estate agent's additional commission, should the lessees exercise their options to renew their leases on the expiration dates.

"2. By the purchase of the property encumbered by the leases, Sam and Max Blasser on March 17, 1949 became liable to pay additional commissions to plaintiff in the event the leases to Henry Klepak and Beef N' Bun and to Dr. R. M. Connell were renewed on their expiration dates of September 1, 1953 and September 30, 1953, respectively.

"3. Since there was no provision in the lease to Henry K. Friedlander relating to liability for agent's commission in the event of sale of the premises, Max and Sam Blasser did not become liable on March 17, 1949, or thereafter, to pay plaintiff an additional commission, should the Henry K. Friedlander lease be renewed on its expiration date of September 16, 1953.

"4. The lease with Henry Klepak and Beef N' Bun on September 1, 1953, was renewed with the defendant, Max Blasser, Mrs. Jessie Blasser and Mrs. Eugene Levin, who became jointly and severally liable to plaintiff, and plaintiff was and is entitled to recover 4% of the total gross rental of $21,000.00, or the sum of $840.00.

"5. The lease with Dr. R. M. Connell on September 30, 1953, was renewed with the defendants, Max Blasser, Mrs. Jessie Blasser and Mrs. Eugene Levin, who became jointly and severally liable to plaintiff, and plaintiff was and is entitled to recover 4% of the total gross rental of $10,500.00 Dollars, or the sum of $420.00.

"6. Since plaintiff's cause of action for the aforementioned sum of $840.00 accrued on September 1, 1953, and for the aforementioned sum of $420.00 accrued on September 30, 1953, plaintiff is further entitled to recover interest as damages at the rate of 6% on $840.00 from September 1, 1953, and on $420.00 from October 1, 1953 to August 3, 1956, the date of the judgment herein, or the aggregate sum of $219.03 as interest to the date of the judgment.

"7. Plaintiff is not entitled to recover attorney's fees herein.

"8. Although there is no evidence in the record showing that plaintiff was the procuring cause of the new leases executed in 1953, the court finds that the plaintiff was the procuring cause of the primary leases and that there was no necessity for him to be the procuring cause for the 1953 leases, since such requirement relates back to 1948."

Defendants seasonably filed objections to the findings of fact and conclusions of law aforesaid, but the court denied them and in the order overruling the same we find this recital: "It is therefore * * * decreed * * * that with reference to the requested Findings of Fact specific reference

should be made to the leases attached as exhibits to the Statement of Facts."

The judgment is assailed by defendants on what they designate as four points. They are substantially: (1) in granting any judgment for commissions to appellee because the suit was by real estate agent for real estate commission and there was no compliance with Art. 6573a, Sec. 28, Vernon's Annotated Civil Statutes. Appellants had at no time signed any agreement to pay commissions, nor had anyone signed any such agreement for appellants; (2) in granting any judgment for commissions to appellee, because the options to renew set forth in the leases and upon which appellee's suit was based were not exercised; the new leases contained different terms and conditions to the primary leases and contained different terms and conditions from those set forth in the renewal options which were executed and the new leases were not negotiated by appellee; (3) in granting any judgment for commissions to appellee, because it is admitted that appellants purchased the land in question subject to the leases involved rather than assuming the same; therefore there was no contractual obligation on the part of appellants to pay any commissions under said leases; (4) in granting any judgment for commissions to appellee, because the only provision in the leases referring to real estate commissions is to the effect that the "undersigned agent" is to receive certain commissions and the evidence shows there was no "undersigned agent."

■ In Judge Peurifoy's conclusions of law we find substantially the following statement: By the execution of the three leases in 1948, Louis Meyer became legally obligated to pay plaintiff an additional commission of 4% of any total gross renewal rental as a real estate agent's additional commission, should the lessees exercise their options to renew their leases on the expiration dates. In each of the foregoing leases referred to by Judge Peurifoy the 14th stipulation had this additional paragraph inserted: "In the event of the assignment of this lease, or sale of the premises, prior to the termination thereof, lessor, his assigns, successors and heirs, individually and jointly, shall be liable for all agent's commissions due or to become due hereunder." In Conclusion of Law No. 2 the court specifically stated that by the purchase of the property encumbered by the leases, Sam and Max Blasser, on March 17, 1949, became liable to pay additional commissions to plaintiff in the event the leases to Henry Klepak and Beef N' Bun and Dr. R. M. Connell were renewed on their expiration dates of September 1, 1953 and September 30, 1953 respectively. As we understand the trial court's conclusions of law, the foregoing quoted provision in the lease had the legal effect to create a covenant running with the land, and the purchaser, with notice of such covenant, as each of them had in each instance, could not avoid the liability thereby fixed by the covenant on the land by purchasing it subject to the provisions of the lease. We are in accord with these views. If such were not the law, a purchaser of real estate could purchase property on which there was an outstanding purchase money debt, secured by a valid lien, and avoid the payment of the debt and the enforcement of the lien by purchasing the property with a provision in the deed to the effect that he was buying it subject to such indebtedness and lien. Needless to say that such purchaser could not do so.

■ In appellee's brief we find substantially this statement: Where a vendee takes property subject to lease agreements, among which lease agreements there is an unescapable covenant binding the lessor, his assigns, successors and heirs for services rendered, there is no action or inaction available whereby such vendee can avoid such covenant. We are in accord with this view and do not think it should be labored. We find no case dealing with the exact situation as is here before us, but we feel that the decisions relating to covenants running with real estate are applicable and controlling

here. In appellee's brief we find a very well considered argument which we have attached as a footnote.[1] See Finley v. Carr, Tex.Civ.App., 273 S.W.2d 439 (writ ref.).

1. "The appellee here, a licensed real estate agent and broker, furnished a very valuable service to appellants' predecessor in title to certain business property and to appellants themselves. He procured three tenants for the premises who paid $37,150. in lease rentals from 1948 to 1953 under written leases and three of the tenants so obtained, in the exercise of renewal options, further obligated themselves to the additional payment of $45,000 in lease rentals to appellants. Meyer, the original owner of the property, had specifically obligated himself and his assigns to pay appellee an agent's commission and additional renewal commissions for these valuable services. Obviously, Meyer, had he not sold the property to appellees, would have been required to pay the renewal commissions. Appellees, who acquired the property subject to the leases, have since that date received and accepted all of the benefits provided for in the leases, including the rentals. They say, however, that they are not legally obligated to pay the renewal commissions because they did not sign an agreement in writing to pay them and because they accepted a deed which provided that the conveyance was subject to the leases.

"Appellants assert that Section 28 of Art. 6573a, V.A.C.S. bars recovery of these renewal commissions. This statement does not rise to the dignity of a legal argument because Section 28 of this Act did not take effect until June 1, 1955, and is therefore inapplicable to this case.

"Art. 6573a, V.A.C.S., is a mere enlargement of a statute of frauds with the object to prevent fraud and perjury and prohibiting real estate dealers from suing for commissions wherein essential element of the appointment could be established only by a parole evidence. In our case all of the elements of the broker's appointment can be established without resort to parole evidence by examining the written lease provisions referred to in appellants' deed from Meyer, and as shown by the court's findings of fact. It is the contention of appellee that there is ample authority for the rules that an agreement of this sort is a covenant running with the land binding upon the purchaser thereof, although enforcement might otherwise be barred by the statute of frauds, and that there are numerous exceptions to the statute of frauds to afford relief in situations such as this.

"In Reserve Life Ins. Co. v. Texas Employers Ins. Ass'n, Tex.Civ.App., 252 S.W.2d 973, 975 (N.R.E.), the court allowed a tenant to recover from lessor's vendee and said: 'In our opinion the covenant to purchase [lighting and air conditioning facilities installed by lessee] ran with the land. There are two classes of covenants that run with the land, those that are implied by law and those that are stipulated by the parties. Here it is thought the parties intended to stipulate the covenant to purchase should run with the land the contract binds the Lessor, his heirs and assigns. The covenant to remove, originally inserted in the second and third leases, ran with the land.'

"In L.R.A. 1915C, p. 190 through 243, an exhaustive annotation on the law involving the transfer of a reversion by a landlord is set out. At page 216 it is stated: 'No precise or exact rule has been enunciated for determining what covenants run with the land. It is usually said by the courts that if the covenant in the lease will be of benefit either to the landlord or tenant by reason of his relation to the particular land then it touches or concerns the land so as to run but such rule is not always easy to apply and the particular cases show that the courts have necessarily used considerable discretion in deciding what particular covenants are included.' Thereafter some twenty-three examples of covenants held to run with the land are discussed, including such as to pay rent, to renew the lease, to repair, to pay for tenant's repairs or improvements, to furnish heat, to compensate lessee for extra labor, etc. In these cases it is consistently held that the transferee of the reversion takes the same burdened with the lessor's covenants, and is liable thereon while he owns the reversion, to the same extent as though he were the original lessor. In 14 L.R.A., p. 185, we find substantially this statement: It is the well settled rule that the burden of an unconditional covenant for renewal in a lease runs with the reversion, and is binding on a purchaser or assignee thereof, at least against one with notice, and that lessee's right is not affected by the death of the lessor. In Thomson v. Dozier, Tex.Civ.App., 168 S.W.2d 319 (no writ history) it was held that parties may contract with their property as they see fit and that a covenant in a deed as to building restrictions was a covenant

Because of the views here expressed, each of appellant's points is overruled.

 Appellee's cross point No. 1 is that the trial court erred in not allowing appellee recovery of reasonable attorney's fee for the reason that the uncontroverted evidence showed that all the requirements of Art. 2226, Rev.Civ.Stats., Vernon's Ann. Civ.St. art. 2226, pertaining to the recovery of attorney's fees for personal services rendered were met. We overrule this contention.

It is true that appellee pleaded that he was entitled to attorney's fees under the provision of such Article, as amended by Acts of the 53rd Legislature, p. 101, Chap. 67, Sec. 1, and he alleged the sum of $1,000 to be a reasonable attorney's fee for such services rendered and to be rendered to plaintiff in this suit. It is also true that in the trial court's findings of fact (paragraph 12) the court specifically found that plaintiff agreed to pay his lawyers the sum of $1,000 for their services, and the court proceeded to set out the various things that plaintiff's attorneys had performed for him. See Paragraph 12 of findings of fact. We find no evidence tendered to the effect that the amount agreed upon between plaintiff and his attorneys was a reasonable fee for the services to be performed; but if we be mistaken in this behalf, it is true that the trial court filed no finding as to what constituted a reasonable fee, and needless to say, the contract that plaintiff had with his lawyers would not be binding upon the defendants here. What was a reasonable fee was a matter to be found by the trier of the facts and appellee filed no exception to the court's failure to find what was a reasonable fee. Needless to say, this court, under the record here made, is without authority to fix and award appellee what it

considers a reasonable attorney's fee for the services rendered in the case at bar. See Smith v. Texas Company, Tex.Com. App., 53 S.W.2d 774, points 9 and 10, p. 779 (opinion approved by S.Ct.).

We have considered cross points Nos. 2 and 3 and think they are without merit and they are overruled.

It follows from what we have said that we are of the view that the judgment of the trial court should be in all things affirmed, and accordingly it is affirmed.

running with the land. In Guardian Loan & Trustee Co. v. Schunke, Tex.Civ.App., 36 S.W.2d 585 (no writ history) it was held that a covenant in a deed allowing grantee the right to remove improvements ran with the land. Appellee submits that the above authorities clearly justify the conclusion that the lease provision in this case concerning the payment of a renewal commission was intended to be and was a covenant running with the land and that appellants took the land burdened therewith and are liable thereon."