MAX BLASSER ET AL V. A. B. CASS, JR.

No. A-6413. Decided June 11, 1958.
Rehearing overruled July 9, 1958.
(314 S.W. 2d Series 807)

*Morris I. Jaffe,* and *J. S. Fichtner,* both of Dallas for petitioners.

*Sanders, Lefkowitz & Green, Jack D. Eades,* all of Dallas, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

A. B. Cass, Jr., a licensed real estate dealer, brought this action against Max and Sam Blasser to recover commissions upon renewal leases covering property which the Blassers had purchased from Louis Meyer. The agreement relied upon by Cass was not signed by the Blassers[1] but was executed by Meyer prior to the time he conveyed the property to the Blassers. The trial court and the Court of Civil Appeals held that the Blassers were liable for the renewal commissions on the theory that the agreement relating thereto and contained in the contract between Meyer and Cass was "a covnant running with the land."[2] The opinion of the Court of Civil Appeals contains a full statement of the case and includes the findings of fact and conclusions of law filed by the trial judge. See, Blasser v. Cass, 302 S.W. 2d 733.

Cass was allowed commissions for the renewals of two leases negotiated by Louis Meyer with Henry Klepak and Dr. R. M.

---

1.—Section 28 of the Real Estate License Act as amended in 1955 reads in part as follows:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreements upon which action shall be brought or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized." Acts 1955, 54th Leg., p. 986, ch. 383, Article 6573-a, Section 28, Vernon's Ann. Texas Stats.

2.—The trial judge did not use the phrase "covenant running with the land," but concluded as a matter of law that:

"By the purchase of the property encumbered by the leases, Sam and Max Blasser on March 17, 1949 became liable to pay additional commissions to plaintiff in the event the leases to Henry Klepak and Beef N' Bun and to Dr. R. M. Connell were renewed on their expiration dates of September 1, 1953 and September 30, 1953, respectively."

Connell respectively. These leases contained the following provisions, viz:

"Lessor (Meyer) agrees to pay the undersigned agent (Cass) a commission for negotiating this lease. If any options are granted Lessee, then Lessor agrees to pay such agent an additional commission on the date such options are exercised by Lessee. Should the term of the lease be for a shorter period than five years, Lessor agrees to pay an additional commission on all renewals, new leases or rental agreements made by Lessor with Lessee relative to Lessee's first five years occupancy of the demised premises from this date; the commission due for each renewal to be figured as if a new lease had been made for such period of time. All of said commissions are to be paid in Dallas, Texas, in accordance with the Commission Schedule of the Dallas Real Estate Board in effect at the date this lease is executed.

" 'In the event of the assignment of this lease, or sale of the premises prior to the termination thereof, Lessor, his assigns, successors and heirs individually and jointly, shall be liable for all agent's commissions due or to become due thereounder.' "

■ Insofar as Cass the real estate agent is concerned, the above promise contained in the leases between Meyer and Klepak and Meyer and Connell were personal covenants. This type of promise, being purely for the benefit of one having no interest in the land, will not be enforced against successive owners of real property as a covenant running with the land. Land is an article of commerce. It should be subject to ready sale and lease. To burden lands with personal covenants would be to hamper and impede real estate transactions to the detriment of owners, purchasers and agents. In the Restatement of the Law of Property, [Vol. 5, Sec. 537] the applicable rule is stated as follows:

"The successors in title to land respecting the use of which the owner has made a promise can be bound as promisors only if

(a)    The performance of the promise will benefit the promisee or other beneficiary of the promise in the physical use or enjoyment of the land possessed by him, or

(b)    the consummation of the transaction of which the promise is a part will operate to benefit and is for the benefit of the promisor in the physical use or enjoyment of land possessed by him,

and the burden on the land of the promisor bears a reasonable relation to the benefit received by the person benefiited." 5 Restatement of the Law of Property, Section 537.

The following rationale of the rule is also given:

"The imposition, by virtue of his succession, of an obligation as a promisor upon the successor of one who has made a promise respecting the use of his land creates a burden upon the ownership of the land of the promisor which may have a disadvantageous effect upon its use and development. There is a social interest in the utilization of land. That social interest is adversely affected by burdens placed on the ownership of land. This is true whether the burden consists of a limitation of the use to which the land can be put or an obligation to pay for benefits received in its use. In the one case, a desirable use may be discouraged; in the other, prospective purchasers having the means to develop the land may be deterred from doing so by reluctance to incur the obligation. Unless a burden has some compensating advantage which prevents it from being on the whole a deterrent to land use and development, the running of the promise by which it was created is not permitted." 5 Restatement of the Law of Property, p. 3219.

See also, Eddy v. Hinnant, 82 Texas 354, 18 S.W. 562; Lakewood Heights v. McCuistion, Texas Civ. App., 226 S.W. 1109; wr. ref.; Montgomery v. Creager, Texas Civ. App., 22 S.W. 2d 463, no writ history; Howard R. Williams, Restrictions on the Use of land, 27 Texas Law Review 419, 429.

■ If it be assumed that despite the wording of Article 6573-a, Section 28, it is not essential that the promise to pay renewal commissions be signed by the Blassers, the parties sought to be charged (a point we do not here decide), it would nevertheless be essential to a recovery by Cass that it be shown that the Blassers specifically assumed and agreed to carry out and perform these personal covenants made by Meyer before they would become personally liable thereon. American Law of Property, Section 9.5. The Blassers did not assume the payment of the lease renewal commissions by accepting a deed made "subject to" the leases on the property. Eddy v. Hinnant, 82 Texas 354, 18 S.W. 562; Kokernot v. Caldwell, Texas Civ. App., 231 S.W. 2d 528, wr. ref. Cf. 29 Texas Jur. 900, Mortgages, Section 82.

The judgments of the courts below are reversed and judgment here rendered that respondent take nothing.

Opinion delivered June 11, 1958.

Associate Justice Smith dissenting.

Rehearing overruled July 9, 1958.