Dean I. DAULEY, d/b/a Dauley
Enterprises, Appellant,

v.

FIRST NATIONAL BANK OF FORT
WORTH, Appellee.

No. 17953.

Court of Civil Appeals of Texas,
Fort Worth.

April 13, 1978.

Rehearing Denied May 11, 1978.

Thorne, Thorne & Robertson, Inc. and Michael A. Robertson, Grand Prairie, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Kilgore & Kilgore and James A. Kilgore, Dallas, for appellee.

OPINION

MASSEY, Chief Justice.

Summary judgment for defendant First National Bank of Fort Worth was rendered upon the suit against it by Dean I. Dauley, d/b/a Dauley Enterprises. Dauley appealed.

Judgment affirmed.

One Ridgway was authorized leasing agent for the Meadowbrook Village Shopping Center at Cleburne, Texas. As such he contracted with Buddies Super Markets for a 22 year lease on space therein located. Dauley was instrumental in securing the Buddies' contract for Ridgway and his principal. For his services the above parties contracted upon the consideration.

The interest of Ridgway's principal was wiped out by foreclosure of a Deed of Trust lien of the Bank placed upon the premises after the Buddies' lease had been effected. The Bank bought the property at the sale by the Trustee. There is a question upon the matter of "notice" to the Bank of the claim of Dauley because of having procured the Buddies' lease, but in the disposition of the case this is deemed immaterial.

Dauley sued the Bank, as the successor in-interest of Ridgway's principal, hereinafter encompassed by the term Ridgway. Dauley alleged that pursuant to the transaction whereby he had procured the Buddies' lease the agreed compensation to be paid him was 6% commission based on the value of the lease and any renewals, secured by oral assignment of a 6% interest in the lease; that Ridgway did continue to collect the monthly rental until the Bank's foreclosure, paying the 6% agreed portion of each payment to Dauley; that though having full notice and knowledge the Bank did fail and refuse to make further payments to him after it foreclosed; that of the oral assignment to him by Ridgway a part was reduced to writing and signed by Ridgway (it is hereinafter copied in the opinion); and that the same was placed of record prior to effecting the lien foreclosed. Concluding, Dauley asserts creation of an equitable lien

upon the realty as security for the obligation created by this transaction with Ridgway. He prayed for the adjudication of indebtedness and for foreclosure of his lien.

The Bank pleaded Texas Business & Commerce Code, Ch. 26, § 26.01, which is the Statute of Frauds. In part its inspiration therefor was found in the case of *Blasser v. Cass*, 158 Tex. 560, 314 S.W.2d 807 (1958). At time of that opinion the Statute of Frauds was V.A.T.S. Art. 6573a, Sec. 28. The holding in *Blasser* was followed by *Tobin v. J. D. Blanton Construction Company*, 392 S.W.2d 881 (Tex.Civ.App.—Texarkana, 1965, writ ref'd n. r. e.) when the Statute bore the same number. In *Tobin* recovery was denied a real estate agent on the basis of the Statute. In the opinion it was stated that the Construction Company had never agreed to pay and did not owe the commission though it had obtained a mechanic's lien upon the property subsequent to the lease in question and thereafter foreclosed it. The real estate agent had effected a lease in behalf of the former owner with a third party tenant and had entitlement to the agreed commission incorporated in the lease. Furthermore, the agent had secured from the owner a Deed of Trust to secure payment.

However, it is simpler to show that the disposition of the case is controlled by *Blasser*; that by the holdings of the Supreme Court in that case the rendition of summary judgment in the one before us was undoubtedly correct. Justice Norvell, author of the opinion, showed the rationale of the controlling Rule in Restatement of the Law of Property Ch. 45 "Running of Burdens", § 537, "Relation of Benefit and Burden", and also recited the Rule, as follows:

"The successors in title to land respecting the use of which the owner has made a promise can be bound as promisors only if

"(a) the performance of the promise will benefit the promisee or other beneficiary of the promise in the physical use or enjoyment of the land possessed by him, or

"(b) the consummation of the transaction of which the promise is a part will

operate to benefit and is for the benefit of the promisor in the physical use or enjoyment of land possessed by him,

"and the burden on the land of the promisor bears a reasonable relation to the benefit received by the person benefited."

One ultimate holding in *Blasser* was: Where lease provided that landlord agreed to pay undersigned agent commission for negotiating lease or renewals thereof and in the event of assignment, landlord, his assigns, successors and heirs would be liable for all agent's commissions due under lease, promise was purely for benefit of one having no interest in land and would not be enforced against successive owners of realty as a covenant running with the land.

Another ultimate holding in *Blasser* was: Where lease contained provisions that realty agent was entitled to commissions on renewal of lease and that in event of assignment successors in interest as well as landlord would be liable for commissions, grantees by accepting deed subject to leases on property did not assume payment of lease renewal commissions.

Upon the theory that they hold to the contrary of *Blasser*, Dauley cites cases: *Riley v. Palmer*, 237 S.W. 326 (Tex.Civ.App.—Amarillo 1922, no writ history); *Dean v. Gill*, 18 S.W.2d 784 (Tex.Civ.App.—Texarkana 1929, no writ history); *Fidelity & Deposit Co. v. Kelsay Lumber Co.*, 29 S.W.2d 1052 (Tex.Comm'n.App., 1930, modified 33 S.W.2d 731); *C. W. Hahl & Co. v. Hutcheson, Campbell & Hutcheson*, 196 S.W. 262 (Tex.Civ.App.—Galveston 1917, error ref'd); and *Davis and Goggin v. State Nat. Bank*, 156 S.W. 321 (Tex.Civ.App.—El Paso 1913, error ref'd.). (Note that prior to June 14, 1927, notation of "error refused" or "writ refused" meant that Supreme Court, though approving result did not necessarily approve opinion; and not even mean that where error was not preserved and presented to the Supreme Court.)

We consider *Riley* inapplicable; it involved an assignment of an interest in and to a fund, not real estate. The same is true of *Dean, Fidelity & Deposit Co., C. W. Hahl*

*& Co.,* and *Davis and Goggin.* All the cases involved liens applicable to personalty, not realty.

Dauley strives to overcome the inhibitions we must impose by *Blasser.* He insists that he should be held entitled to introduce parol testimony despite the Statute of Frauds to show the character of his assignment from Ridgway to have been an interest in realty, something which could only be accomplished by parol. The only memorandum in writing read as follows:

"Re Buddies Lease in Cleburne

"I am forwarding an acceptance letter to you whereby you agree to pay me a 6% commission on the Buddies lease in Cleburne for the life of the lease, which is 22 years plus any renewals. My calculation indicates that the commission should be $283.50 per month. This is based upon 27,000 square feet × $2.10 × 6% and dividing this amount by 12.

"If this is acceptable, please indicate by signing below.

"With kindest personal regards,

"Sincerely yours,

/s/ "Dean I. Dauley

.    .    .    .    .

"ACCEPTED: /s/ I. Boyd Ridgway."

Recognizing that the letter, in and of itself, is insufficient to meet the requirement of a promise or agreement (or memorandum of such) in writing which would establish an assignment of an interest in the real estate—as distinguished from an interest in a fund, as personalty—Dauley seeks to assert existence of his right to show that the "true consideration" moving from Ridgway to him included the assignment of an interest in realty. Thereby he attempts to avoid the restrictions of the Statute of Frauds. See Texas Business & Commerce Code, Ch. 26, "Statute of Frauds", § 26.01, "Promise or Agreement Must be In Writing". He likewise seeks to avoid the restrictions of the Statute of Conveyances. See V.A.T.S., Title 31, "Conveyances", Art. 1288, "Instrument of conveyance". The article provides that no estate in lands and tenements shall be conveyed from one to another unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing.

These statutes bar the recovery of Dauley in view of their operation to render his evidence inadmissible unless he may show himself entitled to introduce evidence that the "true consideration" from Ridgway to him was assignment of the realty interest—as distinguished from an interest in a fund.

As pointed out by the Bank Dauley's attempt is to recover from it the debt, default, or miscarriage of Ridgway, and this would be within the inhibitions of the Statute of Frauds in the absence of written memorandum. Further, since the agreement accepted by Ridgway created a mere personal obligation to pay a calculable amount of money contingent upon Ridgway's receipt of rentals from the tenant, reception by the court of testimony that the parties orally agreed to any assignment of rentals, or to the imposition of any charge or lien would be to violate the Parol Evidence Rule. Consequently there would be no admissible evidence which would sustain Dauley's allegations; any issue as to oral agreements between him and Ridgway would not be material. Even if the court were to find that such an agreement existed the determination would not entitle Dauley to judgment against the Bank.

Dauley's statement in his brief is that in the posture of the case on motion for summary judgment the Bank would not be entitled to prevail unless its summary judgment proof demonstrated as a matter of law that there was no enforceable assignment between Dauley and Ridgway. Essentially the statement is correct. Actually the Bank would be entitled to prevail if its proof demonstrated as a matter of law that Dauley would be unable to prove by evidence admissible upon trial that he had an enforceable contract with Ridgway. That having been what the Bank proved the summary judgment was correctly rendered. *Sparkman v. McWhirter,* 263

S.W.2d 832, 838 (Tex.Civ.App.—Dallas 1953, error ref'd); Tex.R.Civ.P. 166–A, §§ (c) & (e), "Summary Judgment".

Judgment is affirmed.