ACCEPTED
06-17-00116-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/7/2018 5:16 PM
DEBBIE AUTREY
CLERK

No. 06-17-00116-CV

IN THE SIXTH COURT OF APPEALS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/8/2018 10:08:00 AM
DEBBIE AUTREY
Clerk

_____

MJR OIL & GAS 2001, LLC

vs.

ARIESONE, LP, GFP TEXAS, INC., MIKEN OIL, INC.,
AND SND ENERGY COMPANY, INC.

_____

Appeal from the County Court at Law No. 2 of
Gregg County, Texas, Cause No. 2016-1054-CCL2

_____

**APPELLEE'S BRIEF**

_____

Lee S. Gill
State Bar No.07921360
gill@jonesgill.com

JONES GILL LLP
6363 Woodway Dr., Ste. 1100
Houston, Texas 77057
Tele: (713) 652-4068
Fax: (713) 651-0716

***Attorneys for Appellee AriesOne, LP***

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..........................................................................................................ii

STATEMENT OF FACTS ........................................................................................................1

SUMMARY OF ARGUMENT ..................................................................................................8

ARGUMENT..........................................................................................................................8

    I.    Standard of Review....................................................................................................8

    II.   The ROFR is not a covenant running with the land....................................................9

        A.   The ROFR must be strictly construed..................................................................10

        B.   The Language the parties chose does not create a covenant running with the land....................10

        1.   Intent to Run ................................................................................................10

        2.   Privity of Estate............................................................................................14

        3.   The *"In Esse"* Requirement.............................................................................16

        4.   The "Touch or Concern" Requirement ...........................................................17

        C.   The Energy-MJR ORI Assignment did not transform the ROFR into a covenant running with the land..........................................................................................18

        D.   Paragraph 13 of the 2002 Settlement Agreement does not transform Paragraph 3.e. into a covenant running with the land..............................................................19

        E.   Cases cited by Appellant are readily distinguishable...................................................19

    III.   The ROFR is an Unreasonable Restraint on Alienation ...........................................22

    IV.   Statute of Frauds .....................................................................................................25

Prayer .................................................................................................................................25

# INDEX OF AUTHORITIES

**Cases**

*Blasser v. Cass*, 158 Tex. 560, 562, 314 S.W.2d 807, 809 (1958)..........................15

*Cherokee Water Co. v. Forderhouse*, 641 S.W.2d 522 (Tex. 1982) ......................22

*Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)........................9

*Davis v. Skipper*, 125 Tex. 364, 370, 83 S.W.2d 318, 321 (1935) ..........................10

*FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) ..........................................................................................................................8

*Gulf, C. & S.F. Ry. Co. v. Smith*, 72 Tex. 122, 124, 9 S.W. 865, 866 (1888) .........16

*Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 123 (Tex. 1996)..................22

*In re El Paso Refinery, LP*, 302 F.3d 343, 356-357 ................................................17

*Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987)................................................................................................... 11, 14

*McMillan v. Dooley*, 144 S.W.3d 159, 185 (Tex. App.—Eastland 2004, pet. denied)........................................................................................................................20

*MPH Production Co., Inc. v. Smith*, 2012 WL 1813467 (Tex. App. – Texarkana 2012, no pet.)....................................................................20

*Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2nd 386 (Tex. App. – Texarkana 1999, pet. denied) ..........................................................21

*Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 223 (5th Cir. 2013)...................................................................................... 16, 17

*Panhandle & S. F. Ry. Co. v. Wiggins*, 161 S.W.2d 501, 505 (Tex. Civ. App. – Amarillo 1942, writ ref'd w.o.m.) ...................................... 16, 17

*Procter v. Foxmeyer Drug Co.*, 884 S.W.2d 853, 862 (Tex. App. - Dallas 1994, no pet.) ....................................................................23

*Settegast v. Foley Bros. Dry Goods Co.*, 114 Tex. 452, 270 S.W. 1014, 1016 (1925)...........................................................................................................................10

*Stone v. Tigner*, 165 S.W.2d 124, 127 (Tex. Civ. App.—Galveston 1942, writ ref'd) .........................................................................................................................21

*TBI Expl. v. Belco Energy Corp.*, 220 F.3d 586, 2000 WL 960047 at (5th Cir. 2000, unpublished, applying Colorado law) ..........................................19

*Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 973
 (Tex. App. – Tyler 2013, no pet.) .................................................... 14, 15
*Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910–11
 (Tex. 1982)....................................................................................... 14, 17

**Secondary Authorities**

Gary B. Conine, *Property Provisions of the Operating Agreement-Interpretation,*
 *Validity, and Enforceability*, 19 Tex. Tech L. Rev. 1263, 1317 (1988)...............22
Harry M. Reasoner, *Preferential Purchase Rights in Oil and Gas Instruments*,
 46 Tex. L. Rev. 57, 65 (1967)...........................................................................23

**STATEMENT OF FACTS**

Appellee AriesOne LP ("AriesOne") submits that a more detailed review of the provisions of and the transactions following the execution of the 2002 Settlement Agreement than that included in Appellant's Statement of Facts will assist in understanding its arguments.

The unrecorded 2002 Settlement Agreement (CR 45-217; App. 5[1]) was between two groups of parties called the "Ryan Parties" and the "Dickerson Parties:"

| | |
|---|---|
| "Ryan Parties" | RFLP O&G 2001, LLC ("RFLP"), MJR Oil & Gas 2001, LLC ("MJR"), Michael J. Ryan ("Ryan"), Sidney L. Goldstein ("Goldstein") |
| "Dickerson Parties" | RAD 2001 LLC ("RAD"), Richard A. Dickerson ("Dickerson"), Energy 2000, Inc. ("Energy"), Energy 2000 NGS, Inc. ("NGS"), Sierra Blanca ("Sierra"), Red Earth, Brothers Oil Company, George Burke, Jim Morrisette, and Kristy Farnsworth |

Ascend Oil & Gas, LLC ("Ascend") was also a party.[2]

The unrecorded 2002 Settlement Agreement settled an apparently complicated dispute and a lawsuit then pending in Dallas County among those sixteen parties by requiring an assignment of, among numerous others, the subject eighteen oil and gas leases in Gregg and Rusk Counties (the "Leases") from Ascend to Energy. Energy then was to assign a 7.5% overriding royalty interest

---

[1]    References to "App." in this brief refer to the Appendix attached to Appellant's Brief.

[2]    These parties will be referred to herein as they are in the 2002 Settlement Agreement.

1

("ORI"), in those same Leases and others, to MJR. The unrecorded 2002 Settlement Agreement contained the following (and numerous other) covenants between the parties:

- It required the "*Dickerson Parties and Ascend*" to "comply with the following terms and conditions," including;

  o Authorizing and directing oil and gas purchasers to pay MJR's ORI directly to MJR. CR 47-49, ¶¶ 3.a., 3.b., 3.c..

  o Providing that *Dickerson Parties and Ascend* shall "not abandon or release a well or lease that is capable of production in paying quantities" CR 49-50 ¶ 3.d.

  o Providing that *Dickerson Parties and Ascend* shall "advise MJR within ten business (10) days of any assignment, farmout, sale or transfer of any property, lease, or well in which MJR has any interest and shall give MJR a right of first refusal to purchase such interest upon the same terms as offered to the *Dickerson Parties or Ascend* by a bona fide third party. If MJR does not agree to purchase such interest within ten (10) days, the *Dickerson Parties* shall advise the new operator and/or transferee of MJR's overriding royalty interest. As a condition precedent to *the* transfer, any transferee *shall be required to agree* to be bound by the obligations to MJR contained in this agreement as it pertains to any interest transferred and give MJR evidence of same." CR 50, ¶ 3.e. (emphasis added).

The "right of first refusal" in paragraph 3.e. is referred to as "ROFR" hereafter.

### Ascend-Energy Assignment (2002)

The 2002 Settlement Agreement was never recorded in Gregg or Rusk County, nor was the 2002 Settlement Agreement mentioned or referred to in the

very first assignment of the Leases ("Ascend-Energy Assignment") from Ascend to Energy dated effective May 1, 2002, (CR 648-705). The Ascend-Energy Assignment was executed and recorded prior to the recording of the Energy-MJR ORI assignment. CR 218-283 (Gregg); CR 284-346 (Rusk). The Ascend-Energy Assignment was not made "subject to" the 2002 Settlement agreement or anything else.

### Energy's Deed of Trust to ARI (2002)

On May 20, 2002, before the Ascend-Energy Assignment and Energy-MJR ORI Assignment were recorded, Energy entered into a loan agreement with American Realty Investors, Inc. ("ARI"), pursuant to which it executed a $1.3 million Note and Deed of Trust covering the Leases to secure same. CR 706-779.[3] The Deed of Trust was recorded along with the Ascend-Energy Assignment and the Energy-MJR ORI Assignment. The lien of this Deed of Trust attached to Energy's interest in the Leases before the recording of the Energy-MJR ORI Assignment. The Deed of Trust was not made "subject to" the 2002 Settlement Agreement or anything else.

### Energy-Gaywood Assignment (2002)

Later the same year, effective October 1, 2002, Energy assigned the Leases to Gaywood Oil & Gas, LLC ("Gaywood"). The Energy-Gaywood Assignment

---

[3] The pages of the Deed of Trust are out of order in the clerk's record. The following CR pages correspond to the page numbers in the footer of the Deed of Trust: 1 – CR 706, 2 – CR 709, 3 – CR 711, 4 – CR 708, 5 – CR 713, 6 – CR 717, 7 – CR 722, 8 – CR 707, 9 – CR 710, 10 – CR 713.

was executed pursuant to a Deed in Lieu of Foreclosure Agreement (CR 782–794) between Dickerson, Energy and ARI, because Energy's $1,300,000 note to ARI, its deed of trust securing the same, and Dickerson's guaranty thereof were in default. CR 782. Gaywood was ARI's "nominee" under the Deed in Lieu of Foreclosure Agreement (CR 782, ¶ F), which provided that Energy's interest in the Leases was to be conveyed to Gaywood, "absolutely and free of any right of redemption . . . or other rights of [Energy] or anyone claiming through or under [Energy]." CR 783 at § 1. The Energy-Gaywood Assignment provided that Energy would hold harmless and indemnify Gaywood against "all liabilities, obligations . . . which may be imposed upon or incurred or paid by [Gaywood] by reason of or in connection with the failure by [Energy], prior to the date hereof, to perform or comply with any of the terms, covenants, conditions or agreements to be performed by [Energy] under the Leases." CR 440-441, 504-504 ¶ 4. Energy warranted that its title was good and indefeasible, "free and clear of all liens and encumbrances of any nature whatsoever." CR 441, 505 ¶ 6. Under the Energy-Gaywood Assignment, Gaywood was *not* "required to agree to be bound by the obligations to MJR contained in [the 2002 Settlement Agreement] as it pertains to any interest transferred and give MJR evidence of same," and the 2002 Settlement Agreement was not mentioned in the Energy-Gaywood Assignment. The Energy-

4

Gaywood Assignment therefore violated the 2002 Settlement Agreement in 2002. MJR asserted no claim as a result of this violation.

## Gaywood-GFP Assignment (2010)

Eight years later, in 2010, Gaywood assigned the Leases and other properties to GFP Texas, Inc. ("GFP"). Under this Assignment ("Gaywood-GFP Assignment," CR 570-595, 596-622), Gaywood was *not* "required to agree to be bound by the obligations to MJR contained in [the 2002 Settlement Agreement] as it pertains to any interest transferred and give MJR evidence of same" and the 2002 Settlement Agreement was not mentioned in the Gaywood-GFP Assignment. The Gaywood-GFP Assignment therefore violated the 2002 Settlement Agreement in 2010. MJR asserted no claim as a result of this violation.

## GFP-AriesOne Assignment (2013)

More than ten years after the 2002 Settlement Agreement, GFP assigned the Leases and numerous other properties to AriesOne ("GFP-AriesOne Assignment") effective January 1, 2013. CR (Supp) 4-14, 15-26). Under this Assignment, AriesOne *did not, and was not required to* "agree to be bound by the obligations to MJR contained in [the 2002 Settlement Agreement] as it pertains to any interest transferred" and *did not, and was not required to* "give MJR evidence of same" nor was the 2002 Settlement Agreement referred to in the GFP-AriesOne Assignment.

Prior to the GFP-AriesOne Assignment, MJR signed an agreement with GFP waiving any rights under its alleged ROFR. CR (Supp) 56.

## AriesOne-QRE (2013) and AriesOne-Miken Assignments (2014)

Later, effective December 1, 2013, AriesOne assigned most of the Leases to QRE Operating, LLC ("AriesOne-QRE Assignment"). CR 795-807. It is undisputed that AriesOne did not require QRE to agree to be bound by any "obligations" to MJR contained in the 2002 Settlement Agreement nor was the 2002 Settlement Agreement referred to in the AriesOne-QRE Assignment.

Later, effective August 1, 2014, AriesOne assigned the remaining Leases to Miken Oil, Inc. ("AriesOne-Miken Assignment"). CR 808-814. It is undisputed that AriesOne did not require Miken to agree to be bound by any "obligations" to MJR contained in the 2002 Settlement Agreement nor was the 2002 Settlement Agreement referred to in the AriesOne-Miken Assignment.

## Energy-MJR ORI Assignment (2002)

The one and only recorded assignment that refers to the any obligations related to the 2002 Settlement Agreement is the 2002 Energy-MJR ORI Assignment. CR 218-284, CR 284-346, App. 6. This assignment contains the following relevant provisions:

- "ASSIGNOR [Energy] further hereby irrevocably consents to, allows and directs any and all current and future purchasers of production from these properties and leases to issue Division Orders to ASSIGNEE [MJR] or ASSIGNEE's designee covering this overriding royalty interest and to pay

6

ASSIGNEE or ASSIGNEE's designee directly for its royalty interest."  App. 6, page 1.

- "ASSIGNOR agrees that *this obligation* [direct payment] is a covenant running with the land and any transfer by ASSIGNOR, its successors or assigns must include *this right of direct payment as well as all the accounting obligations* set out in the Settlement and Release Agreement executed this date by ASSIGNEE and ASSIGNOR and any assignee or successor in interest must agree to be bound by the terms of the Settlement and Release Agreement as a condition precedent to the transfer of any of the Properties."  App. 6, page 1.

Several things are noteworthy about the Energy-MJR ORI Assignment: (a) it assigns to MJR only a 7.5% ORI in the relevant Leases; (b) only the "direct payment" obligation is referred to as a covenant running with the land, not any other covenant; (c) any transfer must include the "direct payment" right, and "the accounting obligations of the Settlement and Release Agreement executed this date" by Energy and MJR; (d) "any assignee or successor in interest must agree to be bound by the terms of the Settlement and Release Agreement," not that "any assignee *is bound*" by such agreement; and (e) the ROFR is not mentioned in the assignment.

MJR and AriesOne both filed motions for summary judgment.  The trial court granted AriesOne's motion and denied MJR's motion, holding that the ROFR was not binding on or enforceable against AriesOne.  App. 1; App. 2.[4]

---

[4]  The other defendants moved for and obtained similar summary judgments based on this ruling.  All were combined into one final judgment.  CR 2189-2191; App 4.

7

## SUMMARY OF ARGUMENT

The ROFR contained in the unrecorded 2002 Settlement Agreement was a covenant personal to the parties thereto, and did not run with the land. The Energy 2000 – MJR ORI assignment in 2002 did not create a new ROFR covenant running with the land. The trial court correctly so held and its judgment should be affirmed. In addition, the ROFR is an unreasonable restraint on alienation and violates the Statute of Frauds, and the judgment may also be affirmed on these grounds.

## ARGUMENT

### I.     Standard of Review

"When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. The reviewing court should render the judgment that the trial court should have rendered. When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (internal citations omitted).

Here, the trial court did specify the grounds for granting AriesOne's motion and denying MJR's motion:  First, "The Court finds, as a matter of law, that the Assignment [of overriding royalty from Energy 2000, Inc. to MJR, App. 6] does

not *create* a Right of First Refusal in favor of MJR covering the 18 leases in question." App. 2 at p. 3; CR 974 (emphasis by the court). Second, "The Court finds, as a matter of law, that the ROFR was not intended to be a covenant running with the land, does not meet the remaining requirements of a covenant running with the land, and is not enforceable against Defendant, AriesOne." *Id.* Since the trial court held that the ROFR "is not enforceable" against AriesOne, this court may affirm the judgment if any of the grounds on which AriesOne moved for summary judgment to that affect are valid. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) ("We conclude that the court of appeals should consider all grounds that the trial court rules on and may consider grounds that the trial court does not rule on in the interest of judicial economy.") Those grounds were (a) the ROFR covenant is not a covenant which runs with the working interest in the Leases which AriesOne acquired in 2013; (b) the ROFR was an unreasonable restraint on alienation; and (c) the ROFR violated the statute of frauds. CR 631-642; CR 872-873.

## II.     The ROFR is not a covenant running with the land

The trial court correctly held that "the ROFR was not intended to be a covenant running with the land, does not meet the remaining requirements of a covenant running with the land." App. 2 at p. 3; CR 974. The ROFR instead created merely a personal covenant between Dickerson Parties/Ascend and MJR.

## A. The ROFR must be strictly construed

Rights of first refusal are restraints on alienation of land and must be strictly construed, and any doubts resolved in favor of the grantee and against the grantor. "Covenants or restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubts should be resolved in favor of the free and unrestricted use of the premises." *Davis v. Skipper*, 125 Tex. 364, 370, 83 S.W.2d 318, 321 (1935), quoting from *Settegast v. Foley Bros. Dry Goods Co.*, 114 Tex. 452, 270 S.W. 1014, 1016 (1925) (covenant "will not be enlarged by construction, but will be given effect according to the plain meaning and intent of the language used"). Thus the clauses of the 2002 Settlement Agreement and the subsequent assignments must be read closely and applied only so far as the language used will fairly allow. The language used by the parties to the 2002 Settlement Agreement, as written, indicates only an intention that the parties to it – and not their successors and assigns – would be bound with respect to the ROFR covenant.

## B. The Language the parties chose does not create a covenant running with the land.

### 1. Intent to Run

One of the requirements for a covenant to run with the land is that the parties to it intended it to run. *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d

632, 635 (Tex. 1987). That intent is not present here. Nowhere in the 2002 Settlement Agreement is there any statement that *any* of its covenants "run with the land." Paragraph 3.e. of the 2002 Settlement Agreement (App. 5) provides:

> The *Dickerson Parties and Ascend* shall advise MJR within ten business (10) days of any assignment, farmout, sale or transfer of any property, lease, or well in which MJR has any interest and shall give MJR a right of first refusal to purchase such interest upon the same terms as offered to the *Dickerson Parties or Ascend* by a bona fide third party. If MJR does not agree to purchase such interest within ten (10) days, the *Dickerson Parties* shall advise the new operator and/or transferee of MJR's overriding royalty interest. As a condition precedent to *the* transfer, any transferee *shall be required to agree* to be bound by the obligations to MJR contained in this agreement as it pertains to any interest transferred and give MJR evidence of same."

CR 50; App. 5 at ¶3.e. (Emphasis added.) This is the language the parties chose to describe one of the "Continuing Obligations to Ryan Parties" (CR 47; App. 5 at ¶ 3) that the Dickerson Parties and Ascend assumed under the 2002 Settlement Agreement. It cannot be reasonably construed to make the ROFR run with the land.

The other subparagraphs of paragraph 3 of that agreement required "Dickerson Parties and Ascend" to provide books and records of Ascend relating to its business activities and assets, development plans, filings with the IRS, SEC and Texas Railroad Commission (CR 47; App. 5 at ¶3 preamble); required "Dickerson Parties and Ascend" to facilitate direct payment of the overriding royalty revenues to MJR, and provide notifications to purchasers regarding

11

division orders (CR 47-48; App. 5 at ¶ 3.a.); required "Dickerson Parties and Ascend" to cooperate if purchasers refused to pay MJR directly, and to pay MJR's overriding royalty revenues within three business days of the receipt by "Dickerson Parties and Ascend" (CR 48-49; App. 5 at ¶ 3.b.); required notifications to MJR from "Dickerson Parties and Ascend" upon change of operator or purchaser regarding direct payment of the overriding royalty to MJR (CR 48; App. 5 at ¶ 3.c.); precluded "Dickerson Parties and Ascend" from abandoning wells or releasing leases capable of production in paying quantities, and required "Dickerson Parties and Ascend" to give notice to MJR of intent to plug any well (CR 49-50; App. 5 at ¶ 3.d.); indemnified MJR and other Ryan Parties against failure of "Dickerson Parties and Ascend" to report or inaccurately reporting production to the Railroad Commission, and from any liabilities therefor (CR 51; App. 5 at ¶ 3.f.); required "Dickerson Parties and Ascend" to provide to MJR maps to well locations, and allow MJR and Ryan parties to enter upon any lease for inspection of wells (CR 51-52; App. 5 at ¶ 3.g.); required "Dickerson Parties and Ascend" to provide monthly accounting statements, filings with the Railroad Commission, and revenue reports (paragraph 3.h.); and required "Dickerson Parties and Ascend" not to take or fail to take any action in violation of state or federal law or regulation of the Railroad Commission, SEC, or Texas Securities Agency (paragraph 3.i.). None of the express "continuing obligations" of

12

"Dickerson Parties and Ascend" to MJR in paragraph 3 of the 2002 Settlement Agreement contain any reference to "successors and assigns." Paragraph 3.e. mentions "transferee" only in connection with "*the* transfer" by Dickerson Parties/Ascend.

In addition to the "continuing obligations to the Ryan Parties" in paragraph 3, the 2002 Settlement Agreement contained numerous other provisions requiring actions by the parties, including extensive indemnification provisions (App. 5 at ¶ 4) arising out of ownership or operation of the hundreds of "Properties" covered – not limited to the eighteen Leases at issue here; mutual releases (App. 5 at ¶ 5); disclosure (App. 5 at ¶ 6); cooperation in the event of MJR's sale of the ORI (App. 5 at ¶ 7); and extensive representations and warranties (App. 5 at ¶ 8).

Appellant argues in this case only the ROFR contained in paragraph 3.e. is binding on successors and assigns, but the logic of its position would be equally applicable to ALL of the other "continuing obligations to Ryan Parties" to successors, including providing books and records relating to business activities and assets, development plans, filings with the IRS, SEC and Texas Railroad Commission, and ALL of the other remaining paragraphs of the agreement, including extensive indemnifications relating to other "Properties." Clearly these provisions resulted from the complex and contentious relationship that the 2002

Settlement Agreement resolved, but equally clearly they were meant to be personal covenants of the parties to it.

## 2. Privity of Estate

Another essential required for a covenant to run with the land is "privity of estate." *Inwood*, 736 S.W.2d at 635. Privity of estate means that "there must be a mutual or successive relationship to the same rights of property." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910–11 (Tex. 1982).

> For a covenant to run with the land, the covenant must be made between parties who are in privity of estate at the time the covenant was made, and must be contained in a grant of land or in a grant of some property interest in the land. Privity of estate between covenanting parties means a mutual or successive relationship exists to the same rights in property. A restrictive covenant is ordinarily enforceable only by the contracting parties and those in direct privity of estate with the contracting parties.

*Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 973 (Tex. App. – Tyler 2013, no pet.)

The parties to the 2002 Settlement Agreement were not in privity of estate when they entered into it. Ascend owned the Leases; neither Energy nor MJR owned any interest in them. The subsequent assignment from Ascend to Energy created privity of estate *between them*; but the Ascend-Energy Assignment did not contain any covenants relating to the ROFR, MJR's ORI, or the requirement that any transferee "agree to be bound" by the 2002 Settlement Agreement. Nor did

14

any subsequent assignee of the Leases "agree to be bound" by the 2002 Settlement Agreement.

MJR had no interest in the Leases at the time of the 2002 Settlement Agreement. An agreement for the benefit of someone having no interest in the land "will not be enforced against successive owners of real property as a covenant running with the land. Land is an article of commerce. It should be subject to ready sale and lease. To burden lands with personal covenants would be to hamper and impede real estate transactions to the detriment of owners, purchasers and agents." *Blasser v. Cass*, 158 Tex. 560, 562, 314 S.W.2d 807, 809 (1958).

The Energy-MJR ORI Assignment created privity of estate *between them*; but subsequent assignees of Energy are not in privity of estate with MJR. Privity of estate requires more than a common source of title. *Wasson*, 405 S.W.3d at 974. The Energy-MJR ORI Assignment was executed on May 5, 2002, effective May 1, 2002, at a time when Energy did not hold any title in the Leases. It was recorded May 31 and June 3 in Rusk and Gregg Counties, respectively. While the Energy-MJR ORI Assignment was recorded within minutes after the Ascend-Energy Assignment, the Energy-MJR ORI Assignment does not *contain* the ROFR requirement; it is only the unrecorded 2002 Settlement Agreement which contains that requirement, and that agreement is not "a grant of the land or some interest therein."

In *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 223 (5th Cir. 2013), the Court held that the "horizontal" privity requirement was satisfied because the covenant was contained in a conveyance from the covenantee to the covenantor.[5] That is not the case here.

### 3. The *"In Esse"* Requirement

A real covenant must relate to a thing in being. "Other necessary elements of a real covenant, or one that runs with land, are that it must be contained in a grant of the land or of some interest or estate therein and, where the assigns of the grantee are not specified, it must be a thing *in esse*." *Panhandle & S. F. Ry. Co. v. Wiggins*, 161 S.W.2d 501, 505 (Tex. Civ. App. – Amarillo 1942, writ ref'd w.o.m.). "[W]hen the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant or annexed to the thing which has no being. If the covenant be to erect or set up a new house and the like, it will not bind the assignees unless they be named in the covenant." *Gulf, C. & S.F. Ry. Co. v. Smith*, 72 Tex. 122, 124, 9 S.W. 865, 866 (1888). At the time of the 2002 Settlement Agreement, the MJR ORI was not then in existence; therefore there was nothing to which the ROFR could be "appurtenant or annexed" and since the clause in question named only "Dickerson Parties and Ascend" as obligated, it did not run to their successors.

---

[5] The Court questioned, but did not decide, whether "horizontal" privity was a requirement of Texas law of real covenants. *Id.* at 223.

16

While the Leases were in existence at the time of the 2002 Settlement Agreement, the MJR ORI was not. Thus, Appellant's reliance on *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 223 (5th Cir. 2013) is misplaced. MJR was the beneficiary of the ROFR and its only ownership interest was the ORI.

The 2002 Settlement Agreement also fails the requirement that the covenant "must be contained in a grant of the land or of some interest or estate therein." *Panhandle*, 161 S.W.2d at 505. The 2002 Settlement Agreement is not a grant of land or any interest in land.

### 4. The "Touch or Concern" Requirement

A covenant touches and concerns the land when it affects the "nature, quality or value of the thing demised, independently of collateral circumstances, or if it affect[s] the mode of enjoying it." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 911 (Tex.1982). The ROFR provision affects MJR only and has no direct impact on the land itself; it does not compel any successor to take any action on the land or to refrain from doing anything on the land. It does not permit MJR to enter upon or utilize the land for any purpose. It is therefore a personal contractual arrangement which does not qualify as a covenant running with the land. *In re El Paso Refinery, LP*, 302 F.3d 343, 356-357 ("Moreover, even when a

covenant impacts the value of land, it must still affect the owner's interest in the property or its use in order to be a real covenant.").

## C. The Energy-MJR ORI Assignment did not transform the ROFR into a covenant running with the land

In the Energy-MJR ORI Assignment (App. 6), Energy agreed to cause purchasers of oil and gas production to pay the proceeds directly to MJR, and agreed that "*this* obligation" is a covenant running with the land and that "any transfer by [Energy], *its successors and assigns*" must include "this right of direct payment as well as all the accounting obligations set out in" the 2002 Settlement Agreement.  App. 6, at 1 (emphasis added).  However, the final clause of the same sentence stated that "any assignee or successor in interest *must agree to be bound* by the terms of the [2002 Settlement Agreement]."  Neither AriesOne nor any other prior or subsequent transferee of the Leases ever "agreed to be bound" by the 2002 Settlement Agreement.  For this reason, the Energy-MJR ORI Assignment does not transform the ROFR into a covenant running with the land, as the trial court correctly held.

The Energy-MJR ORI Assignment (App. 6) provides only that the "direct payment" obligation is a covenant running with the land.  Here, it is not the "direct payment" obligation that is at issue, only the ROFR.  The parties clearly knew how to say that an obligation runs with the land, but did not do so with respect to the

ROFR.  Instead, they required any assignee or successor to "agree to be bound."  If the ROFR really was a covenant running with the land, express agreement by any assignee or successor in interest would be unnecessary.

### D. Paragraph 13 of the 2002 Settlement Agreement does not transform Paragraph 3.e. into a covenant running with the land.

Paragraph 13 of the 2002 Settlement Agreement (CR 57; App. 5, ¶ 13) provides that it will be "binding upon and inure to the benefit of the parties, and all of their respective assigns, successors, agents, servants, employees, insurers, and legal representatives."  However, this general "successors and assigns" provisions cannot be used to bootstrap the ROFR covenant in paragraph 3.e. into a covenant running with the land.  Such "broad and vague" language is not sufficient to make specific and otherwise personal covenants "run with the land."  *TBI Expl. v. Belco Energy Corp.*, 220 F.3d 586, 2000 WL 960047 at  (5th Cir. 2000, unpublished, applying Colorado law).  Unless the paragraph 3.e. ROFR itself is a covenant running with the land, paragraph 13 cannot make it so.

### E. Cases cited by Appellant are readily distinguishable

Clearly, not *every* ROFR is a covenant running with the land.   The cases cited by MJR do not so hold.  Instead, the particular language used by the parties always controls.  Differences in the language of the particular agreements in those cases make them readily distinguishable from this case.

In *McMillan v. Dooley*, 144 S.W.3d 159, 185 (Tex. App.—Eastland 2004, pet. denied), the dispute was between the holder (Johnson) of a preferential right to purchase contained in a farmout agreement, the other party to that agreement (McDonald), and the latter's assignee (McMillan et al). The language creating the preferential right as quoted in the opinion is as follows:

> It is further understood and agreed that we, *for ourselves, our successors and assigns*, reserve a preferential right to purchase the lease to be assigned herein, including any personal property which may be situated thereon. Before you, or *your heirs, successors or assigns*, shall (1) sell all or any portion of the lease to be assigned herein, (2) plug and abandon any wells on said lease, or (3) finally plug and abandon said lease, you shall first notify us, or *our successors or assigns*, in writing by registered mail. Such notification shall include the highest bona fide price offered, and we, or our *successors or assigns*, shall have ten (10) days after receipt of such written notification to purchase for the price offered and receive an assignment, or to reject such offer and allow same to be sold and/or abandoned. If we, or *our successors or assigns*, fail to act within ten (10) days after receipt of such written notice, then you, *your heirs, successors or assigns*, shall be free to sell and/or abandon. The above and foregoing preferential option to purchase shall not apply to hypothecation or mortgage of your assets.

144 S.W.3rd at 164 (emphasis added). The emphasized phrases clearly showed that, unlike paragraph 3.e., the parties intended to bind their successors and assigns to the covenant.

In an unpublished opinion of this court, *MPH Production Co., Inc. v. Smith*, 2012 WL 1813467 (Tex. App. – Texarkana 2012, no pet.) the language of the "right of first refusal" contained in a recorded deed specifically stated that the right

of first refusal "shall be binding upon the Grantors, and their respective heirs and assigns." Id at *3. No such language appears in the 2002 Settlement Agreement.

In *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2nd 386 (Tex. App. – Texarkana 1999, pet. denied), the deed restrictions were recorded in the deed records and expressly provided that they would be binding on the then owners and their "heirs, grantees and assigns forever." *Id*. at 391. Moreover, all successive transfers of the property specifically referred to and incorporated the restrictions. The court found that these provided sufficient evidence of the intent that the covenants run with the land. Those facts, however, are not present here. There is no statement of intent that the ROFR extend to and bind successors and assigns, and none of the subsequent conveyances of the working interest in the Leases were ever made "subject to" or even referred to the ROFR.

In *Stone v. Tigner*, 165 S.W.2d 124, 127 (Tex. Civ. App.—Galveston 1942, writ ref'd), a five-year grazing lease granted the lessee (Tigner) a right of first refusal or option to purchase if the lessor received an offer to purchase from a third party *during the term of the lease*. About 18 months into the term of the lease, the lessor received an offer to purchase from a third party (Stone), notified Tigner, and Tigner attempted to exercise his option. The lessor and Stone concluded the sale, and Tigner sued both of them for violating his option rights. The court, unsurprisingly, held that the option was not cut off by the sale to Stone (who had

21

actual knowledge of the lease), that Stone was subject to the right of first refusal, and that Stone was bound to convey the tracts to Tigner. In the present case, the ROFR, if applicable, is of unlimited duration. Moreover, MJR waited 14 years to sue to enforce it, allowing several intervening sales to occur without asserting it.

The reason that the 2002 Settlement Agreement requires that "any transferee . . . agree to be bound by the obligations to MJR contained in this agreement" was because the original parties knew that their successors would need to expressly agree to be bound by the ROFR, if it was to be enforceable. Neither AriesOne nor its predecessors GFP or Gaywood ever "agreed to be bound" by the ROFR provision of the 2002 Settlement Agreement. The "agree to be bound" language is mere surplusage if the ROFR is a covenant which runs with the land. See *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 123 (Tex. 1996) ("However, the commonly accepted meaning of the 'royalty' and 'market value at the well' terms renders the post-production clause in each lease surplusage as a matter of law.")

## III. The ROFR is an Unreasonable Restraint on Alienation

The ROFR, if applied to all successors and assigns, forever, is an unreasonable restraint on alienation. This case is unlike *Cherokee Water Co. v. Forderhouse*, 641 S.W.2d 522 (Tex. 1982), where the Grantee's option to purchase the Grantor's reserved minerals, applied only to the parties to the Deed, and was not unlimited in time. The unlimited duration of the ROFR is a major factor in the

consideration of this question. *Procter v. Foxmeyer Drug Co.*, 884 S.W.2d 853, 862 (Tex. App. - Dallas 1994, no pet.)(fixed-price, unlimited-duration purchase option is "an unreasonable restraint on alienation and is void as a matter of law"). The ROFR in this case is unlike a preferential right to purchase found in many model-form oil and gas joint operating agreements. In joint operating agreements,

> [T]he preferential right to purchase serves two purposes. First, it assures its holder an opportunity to acquire further interests in the contract area. The holder's evaluation of the area may be greatly enhanced by initial development and may increase his interest in procuring a larger share. Moreover, there is some feeling that if any parties should have an opportunity to acquire an interest in the unit, it ought to be those that have been at risk in exploratory efforts which may have contributed to the development of the property. The second purpose for providing for this pre-emptive right is to ensure the parties retaining their interests in the contract area some degree of control in excluding undesirable participants who may not have the necessary financial ability to bear their share of expenditures or who might frustrate development with management and engineering philosophies which current participants oppose.

Gary B. Conine, *Property Provisions of the Operating Agreement-Interpretation, Validity, and Enforceability*, 19 Tex. Tech L. Rev. 1263, 1317 (1988). In this case, the ROFR serves neither of these purposes.

The application of the ROFR in this case, where AriesOne acquired and sold numerous oil and gas leases and wells in addition to the eighteen Leases allegedly subject to it, illustrates why it is an unreasonable restraint on alienation. AriesOne purchased and sold the Leases as part of a "package sale" where only some of the properties involved were allegedly subject to the ROFR. In such a situation, if

MJR were allowed to exercise its purported ROFR, how would it do so? Could it elect to purchase only the eighteen Leases, or would it be required to purchase all oil and gas leases and wells that were part of the package? Could it further elect to purchase only the best and most profitable Leases ("cherry-picking"), or would it have to purchase all of them? How would the purchase price be allocated among the properties offered? Clearly the drafters of the ROFR, assuming they intended it to apply to successors and assigns, made no provision for such matters. It is precisely this uncertainty that makes this "a restraint sufficiently obnoxious to the commercial development of oil and gas interests to be void under the Rule [Against Restraints on Alienation]." Harry M. Reasoner, *Preferential Purchase Rights in Oil and Gas Instruments*, 46 Tex. L. Rev. 57, 65 (1967).[6]

Another unreasonable aspect of the ROFR is its capability of division among a potentially unlimited number of holders. If the MJR ORI – to which Appellant claims the ROFR is appurtenant – is divided among two, four or a hundred owners, each of them would have to be located, tracked down and offered the opportunity to purchase the Leases on the terms offered. The likely insurmountable difficulties in doing so would make the Leases essentially unmarketable.

---

[6] The author also argues that a preferential right to purchase of unlimited duration probably violates the Rule against Perpetuities, "since it gives its holder a conditional right to specific performance, it creates the possibility of the future vesting of an estate in land, which, if unlimited or merely limited to the duration of an oil and gas lease, could vest well beyond the period permitted by the Rule." *Id.* at 66.

## IV. Statute of Frauds

The same difficulties invoke the Statute of Frauds. The failure of the ROFR provision "to provide an adequate formula for determining the terms for its exercise" in a package sale renders it void under the Statute of Frauds. "[S]ound draftsmanship requires that the manner of its application to a package oil and gas transaction be specifically articulated in the preferential purchase right." *Id.* at 60. Such draftsmanship was not demonstrated in the case of this ROFR, and the uncertainty of the language renders the ROFR unenforceable against AriesOne.

## Prayer

AriesOne therefore prays that the trial court's summary judgment rulings be affirmed, that all costs be taxed against Appellant, and for all other relief to which it is entitled.

Respectfully submitted,

*/s/ Lee S. Gill*
Lee S. Gill
State Bar No.07921360
gill@jonesgill.com

JONES GILL LLP
6363 Woodway Dr., Ste. 1100
Houston, Texas 77057
Tele: (713) 652-4068
Fax: (713) 651-0716

***Attorneys for Appellee AriesOne, LP***

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2) because it contains 6,254 words, excluding the parts of the brief that are excepted by Tex. R. App. P. 9.4(i)(l).

*/s/ Lee S. Gill*

# CERTIFICATE OF SERVICE

I certify that on May 7, 2018, a copy of this Appellees' Brief was served on the following counsel of record via electronic means:

J. Stephen Barrick
State Bar No. 00796168
sbarrick@hicks-thomas.com
John B. Thomas
State Bar No. 19856150
jthomas@hicks-thomas.com
HICKS THOMAS LLP
700 Louisiana Street, Suite 2000
Houston, Texas 77002

***Attorneys for Appellant MJR Oil & Gas 2001 LLC***

Thomas H. Brown
State Bar No. 03175650
tombrown@tombrownlaw.com

LAW OFFICE OF THOMAS H. BROWN, PLLC
116 Kilgore Street
Kilgore, Texas 75662

***Attorneys for Appellee SND Energy Company Inc.***

Michael E. Starr
State Bar No.19078400
mstarr@ccfww.com
COGHLAN CROWSON, LLP
P.O. Box 2665
Longview, Texas 75606

***Attorneys for Appellees GFP Texas, Inc. and Miken Oil, Inc.***

/s/  Lee S. Gill