**Affirmed and Opinion filed April 29, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00269-CV

**LENNAR HOMES OF TEXAS LAND AND CONSTRUCTION, LTD. AND LENNAR HOMES OF TEXAS SALES AND MARKETING, LTD.,**
**Appellants**

**V.**

**KARA WHITELEY, Appellee**

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 17-CV-0253**

## O P I N I O N

Appellee Kara Whiteley sued appellants Lennar Homes of Texas Land and Construction, Ltd. and Lennar Homes of Texas Sales and Marketing, Ltd. (together, "Lennar"), asserting claims in connection with her home's construction. The trial court granted Lennar's motion to stay proceedings pending arbitration. After the completion of arbitration, Lennar moved to confirm the arbitration award and Whiteley filed a motion to vacate the award. The trial court denied Lennar's

motion and granted Whiteley's motion. For the reasons below, we affirm.

## BACKGROUND

In May 2014, Lennar sold Cody Isaacson a house in Dickinson, Texas (the "House"). The House was conveyed to Isaacson via special warranty deed and covered by the warranties described in Lennar's "1-2-10 Single-Family Warranty." The special warranty deed and single-family warranty both contained arbitration provisions.

Whiteley purchased the House from Isaacson on July 31, 2015. Whiteley sued Lennar approximately two years later, asserting claims for negligent construction and breach of implied warranties. Whiteley alleged the House had "a serious mold problem" caused by deficiencies in the heating, ventilation, and air conditioning system.

Lennar answered the petition and filed an "Application to Stay Proceedings Pending Arbitration". Responding to the application, Whiteley asserted she and Lennar were not bound by a valid arbitration agreement. The trial court granted Lennar's application to stay proceedings and the parties proceeded to arbitration.

In arbitration, Whiteley pursued her claims against Lennar for negligent construction and breach of implied warranties. Lennar filed counterclaims against Whiteley for (1) bringing groundless claims in bad faith, and (2) filing a lawsuit in violation of the arbitration agreement. Lennar also filed third-party petitions against Big Tex Air Conditioning, Inc. and Xalt Holding, LLC seeking contribution and indemnity.[1] The proceedings were conducted in accordance with the Federal Arbitration Act ("FAA"). *See* 9 U.S.C.A. §§ 1-16.

---

[1] Big Tex designed and installed the air conditioning system in Whiteley's home and Xalt inspected multiple phases of the home's construction.

2

The arbitrator issued his award on December 13, 2018. The arbitrator denied Whiteley all relief sought against Lennar and awarded Lennar attorney's fees and costs from Whiteley, Big Tex, and Xalt.

Back in the trial court, Lennar filed a combined "Motion to Confirm Arbitration Award and Motion to Join Additional Parties." Lennar requested that judgment be rendered in conformance with the award and asked that Big Tex and Xalt be joined in the action. Whiteley responded to Lennar's combined motion and filed a "Motion to Vacate the Arbitration Award", asserting she and Lennar were not bound by a valid arbitration agreement.

On March 7, 2019, the trial court signed an order (1) denying Lennar's combined motion to confirm the arbitration award and motion to join additional parties, and (2) granting Whiteley's motion to vacate. Lennar filed a notice of interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(5).

### ANALYSIS

Challenging the trial court's order vacating the arbitration award, Lennar raises the following issues: (1) the trial court erred by vacating the arbitration award with respect to Big Tex and Xalt; (2) Whiteley is bound by the arbitration agreements in Isaacson's special warranty deed and the single-family warranty; and (3) Whiteley agreed to arbitrate her claims during the arbitration proceeding. We consider these issues individually.

## I.     The Arbitration Award Against Big Tex and Xalt

On appeal, Lennar challenges the vacatur of the arbitration award as it applies to Big Tex and Xalt. Asserting the FAA lists the exclusive grounds for vacating an arbitration award (*see* 9 U.S.C.A. § 10(a)), Lennar argues that neither Whiteley, Big Tex, nor Xalt "have identified a valid basis for vacating the award's

3

rulings on Lennar's claims against Big Tex and Xalt."

Big Tex and Xalt were not parties to the underlying proceeding when Lennar sought to confirm (and Whiteley sought to vacate) the arbitration award. Rather, Lennar attempted to join Big Tex and Xalt in the action through its combined motion to confirm the arbitration award and motion to join additional parties. In its March 7 order, the trial court denied Lennar's combined motion and granted Whiteley's motion to vacate the arbitration award.

Contrary to Lennar's argument, we do not construe the trial court's March 7 order as vacating the arbitration award with respect to Big Tex and Xalt. In her motion to vacate, Whiteley argued only that she and Lennar are not parties to a valid arbitration agreement — she did not raise any arguments with respect to Big Tex or Xalt or request any action from the trial court with respect to these parties or the arbitration awards rendered against them. Ruling on Whiteley's motion, the trial court's March 7 order states:

> It is further, ORDERED that [Whiteley's] Motion to Vacate the Arbitration Award is hereby GRANTED. It is further, ORDERED that the arbitration award is hereby vacated.

Although the trial court's wording is not a model of clarity, we have been provided no evidence tending to suggest that it intended to grant relief that had not been requested. Therefore, because the vacatur of the arbitration award against Big Tex and Xalt was neither sought in Whiteley's motion nor explicitly granted by the trial court's March 7 order, we do not construe the order as granting this relief.

Moreover, the Texas Arbitration Act ("TAA") provides that an application to vacate an arbitration award shall follow the same procedure used in other civil cases.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.093. "'Thus, applications to

---

[2] Even though the parties' arbitration proceeding was governed by the FAA, procedural

4

confirm or vacate an arbitration award should be decided as other motions in civil cases; on notice and an evidentiary hearing, if necessary.'" *New Med. Horizons II, Ltd. v. Jacobson*, 317 S.W.3d 421, 427 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 430 (Tex. App.—Dallas 2004, pet. denied)).

Here, the record does not show Big Tex and Xalt received proper notice of Whiteley's motion to vacate or had an opportunity to be heard with respect to the issues it raised. Rather, Lennar attempted to join Big Tex and Xalt in the underlying proceeding as part of its motion to confirm the arbitration award and the trial court denied the requested joinder. Therefore, because Big Tex and Xalt were not parties to the underlying proceeding when the motion to vacate was granted and did not have an opportunity to be heard on the issue, we do not construe the order as adjudicating any issues with respect to those parties. *See Estrada v. River Oaks Bank & Trust Co.*, 550 S.W.2d 719, 729 (Tex. Civ. App.— Houston [14th Dist.] 1977, writ ref'd n.r.e.) ("It is a rule of universal application that the rights of no one shall be concluded by a judgment rendered in a suit to which he was not a party.").

Because Lennar's first issue seeks to challenge relief that was not granted in the trial court's March 7 order, we overrule the issue.

## II. The Arbitration Agreements in the Special Warranty Deed and Single-Family Warranty

In its second issue, Lennar asserts Whiteley was required to arbitrate her

---

matters regarding arbitration awards in Texas courts are governed by Texas procedural rules. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992); *see also Broemer v. Houston Lawyer Referral Serv.*, 407 S.W.3d 477, 480 n.9 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Texas procedural rules apply without regard to whether the Texas Arbitration Act (TAA) or the FAA governs the issues in this appeal.").

claims against Lennar pursuant to the arbitration agreements in (1) the 2014 special warranty deed conveying the House from Lennar to Isaacson, and (2) the single-family warranty effective on the date Isaacson closed on the House's purchase. Therefore, Lennar argues, the trial court erred by vacating the arbitration award against Whiteley.

## A. Standard of Review and Governing Law

The parties do not dispute that the arbitration agreements at issue are governed by the FAA. *See* 9 U.S.C.A. §§ 1-16. In general, arbitration under the FAA is required if (1) the parties have a valid agreement to arbitrate, and (2) the claims raised fall within that agreement's scope. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).

The existence of a valid arbitration agreement between specific parties is a gateway matter for the court to decide. *Longoria v. CKR Prop. Mgmt., LLC*, 577 S.W.3d 263, 267 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Under the FAA, ordinary principles of state contract law determine whether the parties have a valid agreement to arbitrate. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). We review *de novo* whether an arbitration agreement is enforceable. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013).

As a general rule, a party must sign an arbitration agreement to be bound by it. *Branch Law Firm, L.L.P. v. Osborn*, 532 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). However, the Texas Supreme Court has recognized that a nonsignatory may be required to arbitrate according to a contractual arbitration clause when principles of contract law or agency would generally bind a nonsignatory to a contract. *See In re Rubiola*, 334 S.W.3d at 224; *In re Kellogg Brown & Root*, 166 S.W.3d at 738. There are at least six theories under which a nonsignatory to an arbitration agreement may be bound to its terms:

(1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018).

## B.    The Special Warranty Deed

The 2014 special warranty deed conveying the House from Lennar to Isaacson states in relevant part:

> This conveyance, however, is made and accepted subject to:
>
> A. Any and all restrictions, encumbrances, easements, covenants, conditions, outstanding mineral interests held by third parties, and reservations, if any, relating to the hereinabove described property as the same are filed for record in the County Clerk's Office of Galveston County, Texas.
>
> B. The arbitration provision referred to on **Exhibit "A"** attached hereto (the "Arbitration Provision").

(emphasis in original).  In relevant part, the special warranty deed's "Arbitration Provision" states as follows:

> Grantor and Grantee specifically agree that this transaction involves interstate commerce and that any Dispute (as hereinafter defined) shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. §§1 et seq.) and not by or in a court of law or equity.  "Disputes" (whether contract, warranty, tort, statutory or otherwise) shall include, but are not limited to, any and all controversies, disputes or claims (1) arising under, or related to, this Deed, the underlying purchase agreement for the sale and conveyance of the Property, the Property, the community in which the Property is located, or any dealings between Grantee and Grantor; (2) arising by virtue of any representations, promises or warranties alleged to have been made by Grantor or Grantor's representative; and (3) relating to personal injury or property damage alleged to have been sustained by Grantee, Grantee's children or other occupants of the Property, or in the community in which the Property is located.

This **Exhibit "A"** shall run with the land and be binding upon the successors and assigns of Grantee.

(emphasis in original).  Relying on these provisions, Lennar raises two arguments to support enforcing the arbitration agreement against Whiteley:  (1) the arbitration agreement is a covenant running with the land, and (2) Whiteley assumed the arbitration agreement when she purchased the House.

### 1.    The special warranty deed's arbitration agreement is not a covenant running with the land.

Under Texas law, a covenant runs with the land when (1) it touches and concerns the land; (2) it relates to a thing in existence or specifically binds the parties and their assigns; (3) it is intended by the original parties to run with the land; and (4) the successor to the burden has notice.  *See Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987).  Expanding on the "touches and concerns the land" requirement, the Texas Supreme Court quoted the following definition from the Restatement of the Law of Property:

> "The successors in title to land respecting the use of which the owner has made a promise can be bound as promisors only if
>
> (a) the performance of the promise will benefit the promisee or other beneficiary of the promise in the physical use or enjoyment of the land possessed by him, or
>
> (b) the consummation of the transaction of which the promise is a part will operate to benefit and is for the benefit of the promisor in the physical use or enjoyment of land possessed by him,
>
> and the burden on the land of the promisor bears a reasonable relation to the benefit received by the person benefited."

*Blasser v. Cass*, 314 S.W.2d 807, 809 (Tex. 1958) (quoting Restatement (First) of Prop.: Servitudes § 537).  As this standard indicates, a covenant running with the land is one intertwined with and affecting the "physical use or enjoyment" of the

8

property. *See id.*

In keeping with this definition, Texas courts have held that covenants running with the land are those affecting the nature, quality, or value of the subject property. *See, e.g., Inwood N. Homeowners' Ass'n, Inc.*, 736 S.W.2d at 635 (a "covenant to pay maintenance assessments for the purpose of repairing and improving the common areas and recreational facilities" in the neighborhood was a covenant running with the land); *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910-11 (Tex. 1982) (agreement to assign interests in oil and gas leases was a covenant running with the land that "clearly affected the nature and value of the estate conveyed"); *MJR Oil & Gas 2001 LLC v. AriesOne, LP*, 558 S.W.3d 692, 700-04 (Tex. App.—Texarkana 2018, no pet.) (right of first refusal in certain oil and gas leases was a covenant running with the land); *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 355-56 (Tex. App.—Eastland 2006, no pet.) (obligation to furnish water to grantee's house and to grantee for purpose of watering livestock was a covenant running with the land); and *Ehler v. B.T. Suppenas Ltd.*, 74 S.W.3d 515, 520-21 (Tex. App.—Amarillo 2002, pet. denied) (covenant restricting alcohol sales on servient estate met requirements for covenant running with the land).

In contrast, covenants that do not burden or restrict the use of the conveyed property are not covenants that run with the land. For example, in *Blasser*, the Texas Supreme Court held that a property owner's covenant to pay commissions to his real estate broker for future lease renewals was a personal covenant unenforceable against later buyers. 314 S.W.2d at 809; *see also id.* ("[t]his type of promise, being purely for the benefit of one having no interest in the land, will not be enforced against successive owners"). More recently, the Eastland Court of Appeals concluded that covenants to provide copies of instruments dealing with the leasing of mineral rights were "mere notice requirements" that did not run with

9

the land. *See Veterans Land Bd. v. Lesley*, 281 S.W.3d 602, 621-22 (Tex. App.—Eastland 2009), *aff'd in part and rev'd on other grounds*, 352 S.W.3d 479 (Tex. 2011).

Here, we conclude the arbitration agreement in the special warranty deed does not touch and concern the land; therefore, it is not a covenant that runs with the land. The arbitration agreement is not premised on the physical use or enjoyment of the conveyed property — instead, the "fundamental purpose of arbitration [is] to provide a rapid, less expensive alternative to traditional litigation." *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995) (per curiam); *see also In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (orig. proceeding) (per curiam) ("the very purpose of arbitration is to avoid the time and expense of a trial and appeal"). Avoiding the time and expense of litigation inures to the benefit of the parties — *not* to the property itself. Accordingly, the special warranty deed's arbitration agreement is more akin to a personal covenant rather than a covenant that touches and concerns the land. *See, e.g., Blasser*, 314 S.W.2d at 809; *Veterans Land Bd.*, 281 S.W.3d at 621-22.

Lennar cites *Hayslip v. U.S. Home Corp.*, 276 So.3d 109 (Fla. Dist. Ct. App. 2019), to support its contention that the special warranty deed's arbitration agreement is a covenant running with the land. In *Hayslip*, a Florida intermediate court of appeals concluded an arbitration provision in an original special warranty deed was enforceable against subsequent purchasers as a covenant running with the land. *See id*. at 114-18.[3] The court's analysis was based in part on cases delineating the contours of covenants running with the land under Florida law. *See id*. at 114. Here, however, our determination regarding whether the parties have a

---

[3] The *Hayslip* court also noted that the issue was one "of first impression with potentially wide-ranging effect" and certified the question to the Florida Supreme Court, which has accepted jurisdiction and ordered full briefing. *See id*. at 118.

valid agreement to arbitrate is premised on principles of Texas contract and real property law. *See In re Rubiola*, 334 S.W.3d at 224. Based on our analysis of Texas case law (*see supra*), we conclude (1) the arbitration agreement at issue does not constitute a covenant that runs with the land as a matter of Texas law and (2) *Hayslip* does not advance a compelling argument to the contrary.

Moreover, the Texas Supreme Court has identified six theories under which nonsignatories to an arbitration agreement may be bound by its terms. *See Jody James Farms, JV*, 547 S.W.3d at 633. The Court has not identified "covenants running with the land" as one of those theories. *See id*. We decline Lennar's invitation to expand Texas law and adopt a new principle previously unrecognized by the Texas Supreme Court despite (1) decades of jurisprudence concerning arbitrations and (2) well-established Texas law concerning the nature of covenants that run with the land.

We overrule Lennar's argument that the special warranty deed's arbitration agreement is a covenant that runs with the land.

### 2. Whiteley did not assume the special warranty deed's arbitration agreement when she purchased the House.

Lennar's argument on this point rests on the following language in the 2015 general warranty deed that conveyed the House from Isaacson to Whiteley:

> This conveyance is made subject to, all and singular, the restrictions, mineral reservations, royalties, conditions, easements, and covenants, if any, applicable to and enforceable against the above-described property as reflected by the records of the County Clerk of the aforesaid County.

Asserting the arbitration agreement is "a restriction, condition, and covenant in the property records," Lennar argues Whiteley's general warranty deed evidences an agreement to assume the arbitration provision.

11

When construing instruments recorded in real property records, we apply the same rules that govern the interpretation of contracts. *Marzo Club, LLC v. Columbia Lakes Homeowners Ass'n*, 325 S.W.3d 791, 798 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Our primary objective is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *Id*. If the instrument can be given a certain or definite legal meaning or interpretation, it is unambiguous and we construe it as a matter of law. *Id*.

Here, we disagree with Lennar's contention that the above-quoted language constitutes an assumption of the special warranty deed's arbitration agreement. By its unambiguous terms, Whiteley's general warranty deed is subject to those covenants "applicable to and enforceable against the above-described ***property***". (emphasis added). The arbitration agreement does not fall within this description — instead, the arbitration agreement states that it is enforceable against the "Grantee . . . [and] his or her children and other occupants of the Property." Accordingly, the arbitration agreement is not a covenant "applicable to and enforceable against the above-described property."

"Generally, a party cannot be held liable under another party's contract without an express or implied assumption of the obligations of that contract." *Taylor Morrison of Tex., Inc. v. Kohlmeyer*, No. 01-19-00519-CV, 2020 WL 7213480, at *8 (Tex. App.—Houston [1st Dist.] Dec. 8, 2020, no pet.) (quoting *NextEra Retail of Tex., LP v. Inv'rs Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2013, pet denied)). The above language from Whiteley's general warranty deed does not expressly assume obligations under Isaacson's special warranty deed. Additionally, the implied assumption theory by which non-signatories may be bound to arbitration agreements does not support Lennar because it applies only to contracts that have been assigned from one party

12

to another. *Kohlmeyer*, 2020 WL 7213480, at *9. Isaacson conveyed the property to Whiteley; the record does not show that he assigned it.

We overrule Lennar's argument that Whiteley assumed the special warranty deed's arbitration agreement when she purchased the House.

### C. The Single-Family Warranty

The single-family warranty was an attachment to the purchase and sale agreement between Lennar and Isaacson. It became effective as of the date Isaacson closed on the House and provided different warranty terms depending on whether issues arose from the House's workmanship, systems, or structural components. The single-family warranty also contains an arbitration agreement. The warranty provides that all of its rights and obligations, including the arbitration agreement, "fully transfer to each successor owner of the Home."

Lennar raises two arguments to support its contention that Whiteley is bound to arbitrate under the single-family warranty: (1) Whiteley is a third-party beneficiary of the warranty, and (2) direct benefits estoppel prevents Whiteley from accepting benefits under the single-family warranty while refusing to arbitrate. We consider these arguments separately.

### 1. Whiteley is not required to arbitrate under the third-party beneficiary theory.

A third-party beneficiary may be compelled to arbitrate under an arbitration agreement. *See, e.g., In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (orig. proceeding) (per curiam). A party's status as a third-party beneficiary depends solely on the contracting parties' intent. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). "Specifically, a person seeking to establish third-party-beneficiary status must demonstrate that the contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the

13

third party's benefit.'" *Id*. (quoting *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curiam)). The benefit must be more than incidental; the parties' intent to confer a direct benefit to the third party must be clearly and fully spelled out in the agreement. *Jody James Farms, JV*, 547 S.W.3d at 635.

The Texas Supreme Court has stated that "there is a presumption against conferring third-party-beneficiary status on noncontracting parties." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (per curiam). Accordingly, "[t]he contract must include a 'clear and unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to create a third-party beneficiary is insufficient." *First Bank*, 519 S.W.3d at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).

Here, the single-family warranty does not contain any language indicating the parties to the agreement, Lennar and Isaacson, intended the agreement to directly benefit Whiteley or entered into the agreement directly for Whiteley's benefit. *See id*. at 102. Rather, the single-family warranty provides a broad description of its transferability:

> All of your rights and obligations under the Lennar Limited Warranty shall, unless previously released by you, or your successor[,] fully transfer to each successor owner of the Home, including any mortgagee in possession, for the remainder of the applicable Warranty Term and any transfer shall in no way affect, increase or reduce the coverage under the Lennar Limited Warranty for its unexpired term. If you sell your Home during the Warranty Term, you agree to give this Warranty Booklet to the successor owner, to inform the successor owner of warranty rights, and to otherwise make it possible for the successor owner to fulfill the successor owner's obligations under the terms of the Lennar Limited Warranty. **If you are an owner other than the original purchaser of the Home, you are bound by all the terms and conditions of the Lennar Limited Warranty including, but not limited to, claims procedures and the requirement to submit any disputes that may arise under the Lennar Limited**

14

**Warranty to <u>binding arbitration</u>**.

(emphasis in original). While the provision states that the warranty's "rights and obligations . . . fully transfer to each successor owner of the Home," that transfer is effective only if the House is sold "during the Warranty Term." If the House is sold outside the "Warranty Term", the successor owner is not entitled to any of the warranty's rights. Moreover, the provision also states that the warranty's rights and obligations were not guaranteed; instead, they could be released by the original owner (Isaacson) or one of his successors.

These time-sensitive benefits that may or may not accrue to successor owners of the House do not constitute a "clear and unequivocal expression" of Lennar's and Isaacson's intent to directly benefit Whiteley as necessary to bind her to the warranty's arbitration agreement. *See Tawes*, 340 S.W.3d at 425; *see also S. Tex. Water Auth.*, 223 S.W.3d at 306-07 (noting that "general beneficence does not create third-party rights," the court held a water supply contract providing that the appellant agreed to sell water to the city did not render the city's residents third-party beneficiaries of contract). Therefore, we overrule Lennar's argument that Whiteley is required to arbitrate under the single-family warranty as a third-party beneficiary.

### 2. Direct benefits estoppel does not require Whiteley to arbitrate.

Under direct benefits estoppel, a nonsignatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, including the obligation to arbitrate. *In re Kellogg Brown & Root*, 166 S.W.3d at 739; *see also Ali v. Smith*, 554 S.W.3d 755, 760 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "When a claim depends on the contract's existence and cannot stand independently — that is, the alleged liability arises solely from the

contract or must be determined by reference to it — equity prevents a person from avoiding the arbitration clause that was part of that agreement." *Jody James Farms, JV*, 547 S.W.3d at 637. But "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties or federal law, rather than from the contract, direct benefits estoppel does not apply, even if the claim refers to or relates to the contract." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 528 (Tex. 2015).

Here, Lennar cites three examples to support its contention that Whiteley has sought direct benefits stemming from the single-family warranty:

- In her second amended petition, Whiteley asserted a Texas Deceptive Trade Practices claim that alleged Lennar "[b]reach[ed] an express or implied warranty."
- Whiteley asked Lennar to plant a tree on her property in December 2015 and April 2016.
- In her original petition, Whiteley sought attorney's fees under Chapter 38 of the Civil Practice and Remedies Code, which "authoriz[es] attorney's fees for suits founded on contract."

These examples are insufficient to bind Whiteley to the single-family warranty's arbitration provision under the theory of direct benefits estoppel.

Beginning with the first example, Whiteley's second amended petition was filed after the trial court granted Whiteley's motion to vacate. Because this allegation was not before the trial court when it ruled on the motion to vacate, it does not support the conclusion that the trial court's ruling was in error. *See, e.g., Cardon Healthcare Network, Inc. v. Goldberg*, No. 03-17-00474-CV, 2018 WL 1124500, at *3 (Tex. App.—Austin Mar. 2, 2018, no pet.) (mem. op.) (reviewing the trial court's ruling on a motion to compel arbitration in light of the allegations in the live pleading rather than those in an earlier petition).

16

Likewise, Lennar's second example relies on two emails attached as evidence to its motion to compel, which was filed after the trial court granted Whiteley's motion to vacate. This evidence was not before the trial court when it made the ruling subject to this interlocutory appeal and, therefore, cannot be used to challenge the ruling on appeal. *See id.*

Lennar's third example relies on the following statement in Whiteley's original petition:

> Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of [Whiteley], including all fees necessary in the event of an appeal of this cause to the Court of Appeals and/or the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code, Chapter 27 of the Texas Property Code, and common law.

This request does not advance a specific claim that depends on a contract's existence. *See Jody James Farms, JV*, 547 S.W.3d at 637. Rather, it lists three separate bases on which attorney's fees are sought. And although section 38.001 of the Texas Civil Practice and Remedies Code provides that attorney's fees may be recovered for a claim based on "an oral or written contract," this is just one of section 38.001's eight permissible bases for an attorney's fees recovery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001. Accordingly, this pleading does not show Whiteley sought to receive direct benefits from the single-family warranty as necessary to bind her to the warranty's arbitration agreement under direct benefits estoppel.

We overrule Lennar's argument that Whiteley is bound to arbitrate under the special warranty deed and the single-family warranty.

## III.  Whiteley's Actions in Arbitration

Finally, Lennar argues that Whiteley "agreed to arbitrate her claims in arbitration and is bound by her decision to do so."  Lennar supports this argument with reference to the following:

- Prior to the arbitration, Whiteley's attorney signed an "Agreement for Arbitration" agreeing to the designation of an arbitrator and the rules applicable to the proceeding.

- Throughout arbitration Whiteley "continued to represent that she was voluntarily agreeing to and participating in the proceeding."  Specifically, Whiteley (1) agreed to all conditions precedent to the arbitration in preliminary hearings; (2) participated in the merits hearing without objection; and (3) submitted two proposed arbitration awards in which she stated that "all conditions precedent to commencing this Hearing had been met."

- The arbitrator's award states that (1) "the Parties . . . confirm[ed] that the Arbitrator had been properly appointed and had jurisdiction to conduct this Arbitration"; (2) "[t]he Parties have jointly and voluntarily conferred on the Arbitrator the authority to conduct these proceedings by the Arbitration Agreement, the Rules and the voluntary participation of the Parties throughout these arbitration proceedings"; and (3) "no party has objected to the jurisdiction of the Administrator or the Arbitrator."

Arguing that these actions show Whiteley "agreed to and voluntarily participated in the arbitration," Lennar contends Whiteley waived her right to subsequently object to the proceeding.

As a predicate to arbitration under the FAA, the parties must have entered into a valid agreement to arbitrate.  *See In re Kellogg Brown & Root*, 166 S.W.3d at 737; *see also* 9 U.S.C.A. § 9 (the court should grant an order confirming an arbitration award "*if* the parties in their agreement have agreed that judgment of the court shall be entered upon the award made pursuant to the arbitration")

(emphasis added); *In re Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration").

Here, after Whiteley filed her original petition in the trial court, Lennar filed an "Application to Stay Proceedings Pending Arbitration". Responding to Lennar's application, Whiteley argued arbitration was not warranted because there was "no arbitration agreement between the parties." Overruling Whiteley's objection, the trial court granted Lennar's application to stay proceedings. Under the applicable law, Whiteley was not entitled to pursue an interlocutory appeal from this ruling. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (noting that, in a matter subject to the FAA, interlocutory appeals are governed by 9 U.S.C. section 16); *see also* 9 U.S.C.A. § 16(a) (listing permissible appeals under the FAA). Whiteley's only option was to proceed with arbitration.

Post-arbitration, Whiteley raised the same grounds in her motion to vacate and received a ruling in her favor. But if the trial court had instead granted Lennar's post-arbitration motion to confirm, Whiteley could have challenged on appeal the trial court's interlocutory order on Lennar's motion to stay proceedings pending arbitration and raised her argument regarding the validity of the arbitration agreement. *See Perry Homes v. Cull*, 258 S.W.3d 580, 585-87, 601 (Tex. 2008) (holding that appellate courts may review trial court orders compelling arbitration on appeal from final judgment rendered upon confirmation of arbitration award and vacating an arbitration award based on a ground raised in the motion to compel proceedings that is not listed in Texas Civil Practice and Remedies Code section 171.088); *Ctr. Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 524 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("when a party appeals a judgment rendered on an arbitration award, the party is not limited to challenging the denial of any

19

application to vacate, modify, or correct the award"; "[t]he appealing party also may challenge any interlocutory order that merged into the trial court's final judgment").

Therefore, regardless of what transpired in arbitration, Whiteley would have been able to challenge on appeal the trial court's ruling regarding whether she and Lennar were bound by a valid arbitration agreement. *See Perry Homes*, 258 S.W.3d at 585-87, 601; *Ctr. Rose Partners, Ltd.*, 587 S.W.3d at 524. We decline to hold that, by reasserting the issue in her motion to vacate and receiving a favorable ruling, Whiteley waived the issue for appellate review.

We overrule Lennar's third issue.

## CONCLUSION

We affirm the trial court's March 7, 2019 order (1) denying Lennar's combined motion to confirm the arbitration award and motion to join additional parties, and (2) granting Whiteley's motion to vacate.


/s/    Meagan Hassan
Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Hassan.